**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Civil Division)**

| | |
|---|---|
| **MICHAEL SHIELDS** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO. MJG 02CV1783** |
| | ) |
| **FEDERAL EXPRESS CORPORATION,** | ) |
| **AND PATRICK J. QUIRKE** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| _____ | ) |

## INTRODUCTION

Plaintiff, a former Senior Manager at Federal Express Corporation terminated for poor

performance, filed this lawsuit alleging race discrimination, racial harassment and retaliation under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.  This Court should dismiss Plaintiff's

claims in their entirety for the reasons set forth below.

**I.    STATEMENT OF UNDISPUTED FACTS**

1.    FedEx hired Plaintiff as a Grade Level 29 Senior Manager with responsibility for the

BCB station in Herndon, Virginia and the BOF station in Winchester, Virginia on January 15, 2000.

(Ex. 1, P. dep., p. 84, l. 10-p. 85, l. 7; Offer letter[1], attached hereto as Exhibit 2).  From July 1, 2000

until Plaintiff's termination on February 26, 2001, Plaintiff's direct supervisor was Pat Quirke.  (Quirke

Decl., ¶ 1, attached hereto as Exhibit 3).

2.    Prior to January 15, 2000, Plaintiff had been a Senior Manager over the GRR, MAG, and HOL

---

[1]    Unless otherwise indicated, all exhibits are documents authenticated at Plaintiff's deposition.

stations in Michigan from October 16, 1997 until October 31, 1999, and Senior Manager over the Business Service Centers from November 1, 1999 until January 15, 2000. (Ex. 1, P. dep., p. 39, ll. 12-21; p. 40, l. 1; p. 48, 11. 4-14; p. 62 ll. 2-9; p. 85, ll. 4-7).

3.      As the Senior Manager, Plaintiff was accountable for the performance of the BCB station. (Ex. 1, P. dep., p. 51, ll. 8-13; p. 52, ll. 16-21; p. 53, ll. 1-21; p. 54, ll. 1-19; p. 56, ll. 19-21; p. 57, ll. 1-21; p. 58, l. 1; p. 59, ll. 18-20; p. 61, ll. 1-11; p. 323, l. 1-p. 325, l. 21; Ex. 3, Quirke Decl., ¶ 2).

4.      Plaintiff understood that he would be disciplined for failure of stations under his supervision to meet performance goals. (Ex. 1, P. dep., p. 325, ll. 6-21; p. 327, ll. 8-11).

5.      Plaintiff received multiple disciplinary counselings and a low Performance Evaluation from Directors other than Quirke when stations under his supervision failed to meet performance expectations. (Dec. 19, 1997 verbal counseling, June 29, 1998 written counseling, July 24, 1998 letter of concern, Feb. 2, 1999 written counseling, Feb. 29, 2000 documented counseling, March 29, 2000 past due PRISM memo, June 9, 2000 miss-sorted freight memo, Sept. 30, 1999 Performance Evaluation, attached hereto as Exhibits 4-11, respectively; Declaration of Cissy Braslow, ¶ 2, attached hereto as Exhibit 12 and Attachment A thereto). At his deposition, Plaintiff testified that Mike Reed (African American, hereinafter "AA"), Cathy Walton (AA), and Jeffrey Brown (AA), the Directors who issued this discipline and low Performance Evaluation, did not discriminate against him, harass him, or treat him unfairly in any way. (Ex. 1, P. dep., p. 42, ll. 13-21; p. 43, ll.1-5, 15-21; p. 44, ll.1-21; p. 48, ll. 15-21; p. 49, ll. 1-18).

6.      Finance and Engineering set performance expectations for the BCB station. (Ex. 1, P. dep., p. 85, ll. 8-21, p. 86, ll. 1-9; Ex. 3, Quirke Decl., ¶¶ 3-5). FedEx communicated these expectations to Plaintiff in a Functional Operating Plan ("FOP"), a budget plan, Management by Objectives ("MBO")

goals, and through regularly scheduled Senior Manager meetings with Pat Quirke. (Ex. 1, P. dep., p. 85, l. 8-p. 88, l. 7; p. 100, ll. 12-19; p. 102, l. 4-p. 104, l. 3; Ex. 3, Quirke Decl., ¶¶ 4-7). Plaintiff had input in setting the performance expectations set forth in the FOP. (Ex. 1, P. dep., p. 85, l. 8-p. 87, l. 15).

7.    The BCB station did not meet established performance expectations during Plaintiff's tenure as Senior Manager. (Ex. 3, Quirke Decl.¶ 8 and Attachment A thereto). Indeed, Plaintiff admits that the BCB station's performance did not meet established performance expectations during his entire tenure as a Senior Manager over this station. (Ex. 1, P. dep., p. 118, l. 1-p. 120, l. 1; p. 123, ll. 5-9, 13-15; p. 124, ll. 6-14). 8.    In August 2000, Plaintiff's Vice President, John Formisano, and Senior Vice President, Ken May, received complaints from BCB hourly employees regarding management's treatment of them and overall conditions at the BCB station. (Ex. 3, Quirke Decl., ¶ 9 and Attachment B thereto). As a result of these complaints, Formisano instructed Quirke to investigate and resolve the employee complaints raised in this email. (*Id.*).

9.    Quirke and the Human Resources Representative for the BCB station, Gay Burvis, held a station meeting attended by approximately 65 BCB hourly employees on October 7, 2000. (Ex. 3, Quirke Decl., ¶¶ 10-11; Burvis Decl., ¶ 2, attached hereto as Exhibit 13). At this meeting, employees raised multiple complaints regarding Plaintiff's management style, demeanor, and treatment of hourly employees. (Ex. 3, Quirke Decl., ¶ 11; Ex. 13, Burvis Decl., ¶ 3).

10.    Based on the employee complaints surfaced in the October 7, 2000 meeting, Quirke met with Plaintiff on October 10, 2000 to discuss ways in which Plaintiff could improve the performance of the BCB station and Plaintiff's relationship with BCB hourly employees. (Ex. 1, P. dep., p. 176, ll. 3-9; Ex. 3, Quirke Decl., ¶ 12).

11.    At his October 10, 2000 meeting with Plaintiff, Quirke offered Plaintiff an opportunity to step down to a lower level Senior Manager position, in lieu of discipline for performance deficiencies. (Ex. 3, Quirke Decl., ¶ 13; Ex. 1, P. dep., p. 210, ll. 2-19).  Quirke made this offer due to the severity of the problems at BCB.  (Ex. 3, Quirke Decl., ¶ 13).  Plaintiff rejected Quirke's offer of a lower level Senior Manager position.  (Ex. 1, P. dep., p. 210, ll. 2-19).

12     Pursuant to FedEx's Performance Improvement Policy ("PIP"), Quirke required Plaintiff to submit a Performance Agreement, detailing the specific steps that Plaintiff would take to improve his performance deficiencies.  (*Id*. at 177, ll. 8-p. 178, l. 19; Ex. 3, Quirke Decl., ¶ 14 and Attachment C thereto).

13.    Quirke provided Plaintiff with two days off with pay to complete a Performance Agreement.  (Ex. 3, Quirke Decl., ¶ 15; Ex. 1, P. dep., p. 178, ll. 20-21; p. 179, ll. 1-2).

14.    On October 13, 2000, Plaintiff provided Quirke with a Performance Agreement.  (Ex. 1, P. dep., p. 179, ll. 3-15; October 13, 2000 Performance Agreement, attached hereto as Exhibit 14; Ex. 3, Quirke Decl., ¶ 16).

15.    Plaintiff's Performance Agreement was unacceptable to Quirke because it did not set forth the specific problems that Plaintiff needed to address at the BCB station, did not set forth in specific detail the steps that Plaintiff would take to improve the problems, and contained no statement of commitment to achieve specific goals within a designated time frame.  (Ex. 3, Quirke Decl., ¶ 16).

16.    Pursuant to FedEx's PIP, Quirke could have terminated Plaintiff's employment for failure to provide a Performance Agreement acceptable to Quirke.  (Ex. 3, Quirke Decl., ¶ 17 and Attachment C thereto).

17.    Instead of terminating Plaintiff's employment in October 2000, Quirke revised Plaintiff's Performance Agreement and discussed the specific requirements of the Agreement with Plaintiff.  (*Id*.).

18.    Plaintiff signed the October 17, 2000 revised Performance Agreement and agreed to follow it.  (Ex. 1, P. dep., p. 182, l. 1-p. 184, l. 10; October 17, 2000 Revised Performance Agreement, attached hereto as Exhibit 15; Ex. 3, Quirke Decl., ¶ 17).

19.    Despite Plaintiff's agreement to follow the October 17, 2000 Performance Agreement, Plaintiff admittedly did not do so.  (Ex. 1, P. dep., p. 189, ll. 3-12; p. 194, ll. 11-21; p. 195, ll. 13-15; p. 196, ll. 14-20; p. 199, ll. 3-7, 13-21; p. 200, ll. 1-3; p. 201, ll. 9-21; p. 202, ll. 1-16; p. 209, ll. 13-17; Ex. 3, Quirke Decl., ¶¶ 18-23).

20.    Under FedEx's PIP, failure to follow a Performance Agreement can result in termination of employment.  (Ex. 3, Quirke Decl., ¶ 24 and Attachment C thereto).

21.    Instead of terminating Plaintiff's employment, Quirke issued Plaintiff a Warning Letter on January 8, 2001 (later modified to a Performance Reminder) for failure to follow the October 17, 2000 Performance Agreement.  (Ex. 3, Quirke Decl., ¶¶ 24, 25 & n.1; Jan. 8, 2001 Warning Letter, attached hereto as Exhibit 16; Jan. 8, 2001 Performance Reminder, attached hereto as Exhibit 16A).

22.    Plaintiff's performance did not improve in January 2001, nor did Plaintiff make an effort to comply with his October 17, 2000 Performance Agreement.  (Exhibit 3, Quirke Decl., ¶ 26; Ex. 1, P. dep., p. 118, l. 1-p. 120, l. 1; p. 123, ll. 5-9, 13-15; p. 124, ll. 6-14; p. 189, ll. 3-12; p. 194, ll. 11-21; p. 195, ll. 1-15; p. 196, ll. 14-20; p. 199, ll. 3-7, 13-21; p. 200, ll. 1-3; p. 201, ll. 9-21; p. 202, ll. 1-16; p. 209, ll. 13-17).

23.     In January 2001, Quirke explained to Plaintiff that he would be receiving a Performance Evaluation in February 2001, and that the evaluation was likely to be unfavorable unless Plaintiff made marked improvements in his performance.  (Ex. 3, Quirke Decl., ¶ 26).

24.     Quirke offered Plaintiff a buy out (severance agreement) on February 1, 2001, if Plaintiff chose to resign rather than face additional discipline for continued performance deficiencies.  (Ex. 3, Quirke Decl., ¶ 27 and Attachment E thereto).  Plaintiff rejected the severance package.  (Ex. 1, P. dep., p. 213, ll. 9-14; p. 364, ll. 3-9).

25.     On February 19, 2001, Quirke gave Plaintiff a Performance Evaluation.  (Ex. 1, P. dep., p. 296, ll. 11-20; Feb. 19, 2001 Performance Evaluation, attached hereto as Exhibit 17).  Quirke rated Plaintiff's overall performance as unsatisfactory, based upon Plaintiff's failure to improve the problems that Quirke addressed with Plaintiff beginning in October 2000.  (Ex. 3, Quirke Decl., ¶ 28).

26.     Pursuant to FedEx's PIP, Quirke issued Plaintiff a Performance Reminder based on the continued performance deficiencies noted in Plaintiff's Performance Evaluation.  (*Id*.; February 19, 2001 Performance Reminder, attached hereto as Exhibit 18).

27.     Quirke required Plaintiff to submit a second Performance Agreement detailing the steps that Plaintiff intended to take to remedy the continued problems at BCB.  (Ex. 3, Quirke Decl., ¶ 29 and Attachment C thereto; Ex. 18).

28.     Plaintiff submitted a Performance Agreement to Quirke on February 20, 2001.  (Ex. 1, P. dep., p. 303, ll. 18-21; p. 304, ll. 1-8; Feb. 20, 2001 Performance Agreement, attached hereto as Exhibit 19).  Quirke rejected this Agreement because it failed to set forth the specific problems that Plaintiff needed to remedy, failed to provide specifics as to how Plaintiff would fix the problems at the BCB

station, and failed to express Plaintiff's commitment to achieving specific goals within a designated time frame.  (Ex. 3, Quirke Decl., ¶ 29, Exs. 18, 19).

29.    Quirke again explained his expectations for an acceptable Performance Agreement to Plaintiff, and gave Plaintiff another opportunity to draft a Performance Agreement acceptable to Quirke. (Ex. 3, Quirke Decl., ¶ 30; February 23, 2001 email, attached hereto as Exhibit 20).

30.    Plaintiff submitted a second Performance Agreement on February 23, 2001, and admittedly failed to include the requirements that Quirke requested.  (Ex. 1, P. dep., p. 309, l. 4-p. 310, l. 6; p. 311, l. 15-p. 312, l. 19; Feb. 23, 2001 Performance Agreement, attached hereto as Exhibit 21; Ex. 3, Quirke Decl., ¶ 31).

31.    Quirke suspended Plaintiff on February 23, 2001, pending investigation into Plaintiff's failure to submit an acceptable Performance Agreement.  (Ex. 3, Quirke Decl., ¶ 32; Feb. 23, 2001 Suspension letter, attached hereto as Exhibit 22).

32.    Quirke issued Plaintiff a Performance Reminder/Termination Letter on February 26, 2001 for failure to submit an acceptable Performance Agreement.  (Ex. 1, P. dep., p. 319, ll. 10-19; Performance Reminder/Termination Letter, attached hereto as Exhibit 23; Ex. 3, Quirke Decl., ¶ 33).

33.    Plaintiff's February 26, 2001 letter was his third disciplinary letter in a 12 month time frame, a termination offense under FedEx's PIP.  (Ex. 3, Quirke Decl., ¶ 33 and Attachment C thereto). Likewise, failure to submit an acceptable Performance Agreement is a termination offense under FedEx's PIP.  (*Id.*).  Accordingly, Quirke terminated Plaintiff's employment.  (Ex. 1, P. dep., p. 319, ll. 10-19; Ex. 23; Ex. 3, Quirke Decl., ¶ 33).

34.    Clint Barnes (Caucasian, hereinafter "C") was the Senior Manager over the DCA station from January 1, 2000 until October 15, 2001.  (Declaration of Clint Barnes, ¶ 3, attached hereto as

Exhibit 24).  His direct supervisor during this time period was Quirke.  (Ex. 24, Barnes Decl., ¶ 3; Ex. 3, Quirke Decl., ¶ 35).  Throughout Barnes' tenure as a Senior Manager over the DCA station, Quirke held regular conference calls or meetings with the Senior Managers in the Capital District to discuss station performance.  (Ex. 24, Barnes Decl., ¶ 4).

35.    On February 19, 2001, Quirke issued Barnes a Performance Evaluation with unsatisfactory ratings in two of ten categories of performance--productivity and safety performance. (Ex. 24, Barnes Decl., ¶ 5).  Barnes' overall Evaluation score was above satisfactory.  (*Id*.).

36.    Quirke required Barnes to submit a Performance Agreement detailing how Barnes intended to remedy the performance deficiencies noted in Barnes' February 2001 Performance Evaluation.  (Ex. 3, Quirke Decl., ¶ 36; Ex. 24, Barnes Decl., ¶ 5).

37.    Barnes submitted an acceptable Performance Agreement on February 27, 2001.  (Ex. 3, Quirke Decl., ¶ 36; Ex. 24, Barnes Decl., ¶ 6).  Quirke followed up with Barnes in March and April 2001 to monitor Barnes' progress in improving productivity and safety at the DCA station.  (Ex. 3, Quirke Decl., ¶ 36; Ex. 24, Barnes Decl., ¶ 6).

38.    Although Barnes followed his February 2001 Performance Agreement and the DCA station made slight improvements, Barnes did not achieve the improvements that Quirke anticipated. (Ex. 24, Barnes Decl., ¶ 6; Ex. 3, Quirke Decl., ¶ 37).

39.    Quirke required Barnes to submit a second Performance Agreement in May 2001.  (Ex. 24, Barnes Decl., ¶ 6; Ex. 3, Quirke Decl., ¶ 37).  Barnes submitted a detailed Performance Agreement on May 22, 2001, and Quirke accepted the Agreement.  (Ex. 24, Barnes Decl., ¶ 6; Ex. 3, Quirke Decl., ¶ 37).

40.    Quirke monitored Barnes' adherence to the May 2001 Performance Agreement in May and June 2001.  (Ex. 24, Barnes Decl., ¶ 7; Ex. 3, Quirke Decl., ¶ 38).  Barnes achieved some, but not all, of the results required under the May 22, 2001 Performance Agreement, though he followed the Agreement.  (Ex. 24, Barnes Decl., ¶ 7; Ex. 3, Quirke Decl., ¶ 38).  Accordingly, Quirke issued Barnes a Performance Reminder on July 5, 2001.  (Ex. 24, Barnes Decl., ¶ 7; Ex. 3, Quirke Decl., ¶ 38).

41.    For personal reasons, Barnes requested that Quirke allow him to demote to a lower level position, shortly after he received the July 5, 2001 Performance Reminder.  (Ex. 24, Barnes Decl., ¶ 8; Ex. 3, Quirke Decl., ¶ 39).

42.    Quirke offered Barnes a Grade Level 26 Manager position at the NYG station in Springfield, Virginia.  (Ex. 24, Barnes Decl., ¶ 8; Ex. 3, Quirke Decl., ¶ 39).

43.    Barnes accepted Quirke's offer of demotion to a Manager position, a three grade level reduction in pay.  (Ex. 24, Barnes Decl., ¶ 8).  Barnes remains employed with FedEx as a Manager. (*Id.*).

44.    Had Plaintiff accepted demotion to a lower level Senior Manager position, a two grade level reduction in pay, he too would still be employed with FedEx, presuming that his performance in his new position met established performance expectations.  (Ex. 3, Quirke Decl., ¶ 40).

45.    Charles Hergesheimer (C) was a Senior Manager at the NDV station in Alexandria, Virginia from January 1, 2001 until the end of June 2001.  (Hergesheimer Decl., ¶¶ 2-3, attached hereto as Exhibit 25).  During this time period, Quirke was Hergesheimer's direct supervisor.  (Ex. 3, Quirke Decl., ¶ 41).  Throughout Hergesheimer's tenure as Senior Manager of the NDV station, Quirke held frequent conference calls and meetings with all of the Senior Managers in the Capital District to discuss station performance and performance expectations.  (Ex. 25, Hergesheimer Decl., ¶ 4).

46.     In June 2001, Quirke discussed the NDV station's failure to meet Quirke's expectations for improvements in performance with Hergesheimer.  (*Id*. at ¶¶ 5-6).

47.     In June 2001, Quirke told Hergesheimer to step down from his Senior Manager position at the NDV station.  (Ex. 25, Hergesheimer Decl., ¶ 7; Ex. 3, Quirke Decl., ¶ 42).  Hergesheimer stepped down from the NDV Senior Manager position at the end of June 2001, and searched for a lower grade level Senior Manager position during July 2001.  (Ex. 25, Hergesheimer Decl., ¶ 8; Ex. 3, Quirke Decl., ¶ 42).  Hergesheimer was advised that, if he did not find a job by the beginning of August 2001, FedEx would terminate his employment.  (Ex. 25, Hergesheimer Decl., ¶ 8).  Hergesheimer accepted a Grade Level 26 Manager position at the CGS station in Beltsville, Maryland, effective August 1, 2001, because he was not offered any other positions.  (Ex. 25, Hergesheimer Decl., ¶ 8; Ex. 3, Quirke Decl., ¶ 42).  The CGS position was a three level reduction in salary.  (Ex. 25, Hergesheimer Decl., ¶ 8; Ex. 3, Quirke Decl., ¶ 42).  Hergesheimer remains employed with FedEx as a Manager.  (Ex. 25, Hergesheimer Decl., ¶ 9).

48.     Pat Lewis (American Indian, hereinafter "AI") was a Grade Level 27 Senior Manager over Dispatch under Quirke's direct supervision from July 1, 2000 until approximately June 2002.  (Ex. 3, Quirke Decl., ¶ 34).  A Grade Level 27 Senior Manager has less responsibilities than a Grade Level 29 Manager, commensurate with the lower level of pay that a Grade Level 27 Senior Manager receives.  (*Id*.).  As the Senior Manager over Dispatch, Lewis did not have responsibility for stations or station productivity.  (*Id*.).  Mr. Lewis' performance was above satisfactory when he reported to Quirke.  (*Id*.).

49.     Plaintiff has no evidence to support his claim that Caucasian Senior Managers reporting to Quirke were subjected to preferential treatment.  (Ex. 1, P. dep., p. 223, ll. 6-18; p. 225, ll. 5-13; p. 226, ll. 15-21; p. 227, ll. 1-11).

50.    Quirke has no knowledge of any Senior Managers who reported to him during Quirke's tenure as Managing Director of the Capital District participating in any Title VII proceeding, investigation or hearing, except for Plaintiff's filing of a Charge with the EEOC after Plaintiff's termination, and this lawsuit.  (Ex. 3, Quirke Decl., ¶ 44).  No Senior Manager who reported to Quirke during his tenure as Managing Director of the Capital District protested any allegedly unlawful employment action to Quirke.  (*Id*.).

51.    Quirke promoted two African American Senior Managers to higher level Senior Manager positions, and recruited African American Senior Manager Keith Jackson for a Grade 29 Senior Manager position at the NDV station during Quirke's tenure as Managing Director of the Capital District.  (*Id*. at ¶ 46).

52.    Of the eight Senior Managers who reported to Quirke during Plaintiff's tenure as a Senior Manager at BCB, only two were Caucasian.  (*Id*. at ¶ 47).

53.    Plaintiff claims that Quirke retaliated against him because he told Quirke in mid-September of 2000 that Manager Rva Pendleton (AA) should receive a documented counseling rather than a Warning Letter for escalating an altercation with subordinate employee Noelle Olson.  (Ex. 1, P. dep., p. 244, l. 4-p. 246, l. 8; p. 256, ll. 3-17).

54.    Plaintiff also claims that he questioned why Manager Clifton Dalton (C), who allegedly also dealt with Olson, was not receiving a Warning Letter.  (Ex. 1, P. dep., p. 244, ll. 4-p. 246, l. 8; p. 256, ll. 3-17).

55.    Plaintiff admittedly did not tell Quirke that he believed the discipline administered to Pendleton was racially motivated.  (Ex. 1, P. dep., p. 256, ll. 18-21; p. 257, ll. 1-2).

56.     Plaintiff further claims that Quirke retaliated against him for reporting to Quirke in late September 2000 that Manager Clifton Dalton told Plaintiff that an hourly, non-management employee, Bobby Richesin (C), told Dalton that he "put that nigger in his place," allegedly referring to Plaintiff. (Ex. 1, P. dep., p. 269, ll. 10-16).

57.     FedEx took prompt and effective action to suspend Richesin, investigate Richesin's alleged conduct, and to prevent any recurrence of the alleged misconduct.  (Ex. 13, Burvis Decl., ¶¶ 4-5).  Richesin never came back to work at FedEx.  (Ex. 13, Burvis Decl., ¶¶ 4-5; Ex. 3, Quirke Decl., ¶ 52).

58.     Plaintiff's job duties as a Senior Manager included reporting allegations that a subordinate used racial slurs to Quirke, and giving Quirke his opinion regarding discipline to be administered to Managers reporting to Plaintiff.  (Ex. 1, P. dep., p. 23, ll. 16-21; p. 24, ll. 1-21; p. 25, ll. 1-15; p. 365, ll. 10-18).

59.     Admittedly, Plaintiff has no evidence of race discrimination, racial harassment, and retaliation, but for his own unsubstantiated belief that Clint Barnes and Charles Hergesheimer were treated differently.  (Ex. 1, P. dep., p. 223, ll. 6-18; p. 225, ll. 5-13; p. 226, ll. 15-21; p. 227, ll. 1-11 p. 260, ll. 2-15; p. 336, l. 4- p. 339, l. 6; p. 342, ll. 15-19; p. 344, 1. 6-p. 348. 1. 20; p. 352, l. 2-p. 356, l. 16).

60.     Plaintiff admittedly continued to perform his Senior Manager job duties despite Quirke's alleged harassment.  (Ex. 1, P. dep., p. 363, ll. 15-18).

61.     FedEx policy prohibits discrimination, retaliation, and harassment.  (Ex. 1, P. dep., p. 23, ll. 16-21 p. 24, ll. 1-21; p. 25, ll. 1-15; Ex. 13, Burvis Decl., ¶ 6).

62.    FedEx has a published EEO policy for addressing discrimination complaints, and this policy is disseminated to all employees, including Plaintiff.  (Ex. 1, P. dep., p. 23, ll. 16-21; p. 24, ll. 1-21, p. 25, ll. 1-15; p. 82, ll. 3-7; Ex. 13, Burvis Decl., ¶ 7 and Attachments A and B thereto; Record of Receipt, attached hereto as Exhibit 26).

63.    FedEx has a policy of equal employment opportunity.  (Ex. 1, P. dep., p. 24, ll. 7-9).

64.    Plaintiff's EEOC charge alleges that FedEx retaliated against him for complaining that Quirke directed him to issue disparate discipline to a subordinate based on the subordinate's race and retaliated against Plaintiff for complaining that a subordinate called Plaintiff a "nigger."  (EEOC Charge, attached hereto as Exhibit 27).  Plaintiff's charge alleges that Quirke retaliated against him by placing him on a performance improvement plan in October 2000, by issuing Plaintiff a disciplinary write up in January 2001, by issuing Plaintiff a Performance Evaluation with unacceptable ratings in January 2001 [sic], by issuing Plaintiff a disciplinary write up in February 2001, and by terminating Plaintiff's employment in February 2001.  (*Id*.).  Plaintiff's charge also alleges that his discipline and termination were based upon his race.  (*Id*.).  Plaintiff's charge does not mention racial harassment.  (*Id*.).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986).  Not every factual dispute between the parties prevents summary judgment.  Instead, the disputed facts must be material and must be facts which, under the substantive law governing the issue, may affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509 (1986).  In order to defeat summary judgment, a plaintiff

cannot rely on speculation, but must go beyond the pleadings and must present facts on each element of his claim showing that there is a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

### III.   PAT QUIRKE IS NOT A PROPER DEFENDANT

Plaintiff's Complaint raises claims of race discrimination, retaliation, and racial harassment against individual Defendant Pat Quirke under Title VII.   (Complaint, ¶ 1).   In the Fourth Circuit, supervisors may not be held individually liable under Title VII. *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998).   Accordingly, Plaintiff's claims against Quirke should be dismissed in their entirety.

### IV.   PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO HIS CLAIM OF RACIAL HARASSMENT

To exhaust his administrative remedies under Title VII, a plaintiff must file a charge within 300 days of the alleged discriminatory treatment.   42 U.S.C. § 2000e-5.   Charges not filed within this time period are time barred. *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 108 S. Ct. 1666 (1988). The scope of a civil suit is limited to the allegations contained in the EEOC charge, and the allegations that are like or reasonably related to the subject matter of the charge.   42 U.S.C. § 2000e-5(e)(1); *Dennis v. Fairfax*, 55 F.3d 151, 156-57 (4th Cir. 1995).

In *Nichols v. Comcast Cablevision*, 84 F. Supp. 2d 642, 656 (D. Md. 2000), *aff'd*, 217 F.3d 840 (4th Cir. 2000), the plaintiff's EEOC charge alleged only sex discrimination, but the plaintiff raised a sexual harassment claim in his lawsuit.   The *Nichols* court held that the plaintiff's sexual harassment claim was not like or reasonably related to the plaintiff's sex discrimination claim. *Id.*   Accordingly, the *Nichols* court dismissed the plaintiff's sexual harassment claim for failure to exhaust his administrative remedies with respect to this claim. *Id.*

Here, Plaintiff's EEOC charge alleges only retaliation and discipline and termination based upon race. (Ex. 27). Plaintiff's charge does not mention racial harassment. (*Id.*). Here, as in *Nichols*, Plaintiff's harassment claim should be dismissed because Plaintiff failed to exhaust his administrative remedies.

## V. PLAINTIFF'S RACE DISCRIMINATION CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW

Under Title VII, Plaintiff must establish the following elements to state a *prima facie* case of race discrimination: (1) he is a member of a protected class; (2) the prohibited conduct in which he engaged was of comparable seriousness to misconduct of employees who are not members of the protected class; and (3) the employer enforced disciplinary measures against the plaintiff more severely than against non-members of the protected class. *Moore v. Charlotte*, 754 F.2d 1100 (4th Cir.)*, cert. denied,* 472 U.S. 1021 (1985)*; Page v. Bolger*, 645 F.2d 227 (4th Cir.), *cert. denied*, 454 U.S. 892 (1981); *Settle v. Baltimore County*, 34 F. Supp. 2d 969, 992 (D. Md. 1999), *aff'd*, 2000 U.S. App. LEXIS 845 (4th Cir. Jan. 24, 2000). Further, "an absolute precondition to suit [for discrimination] is that some adverse employment action have occurred." Plaintiff cannot establish a *prima facie* case of race discrimination and, therefore, his claim should be dismissed. *Bristow v. Daily Press, Inc*., 770 F.2d 1251, 1255 (4th Cir. 1985), *cert. denied*, 475 U.S. 1082 (1986).

### A. Plaintiff Cannot Establish That He Was Disciplined More Severely Than Similarly Situated Non-African American Employees

To establish element three of his *prima facie* case, Plaintiff must demonstrate that FedEx treated him less favorably than similarly situated employees. *Moore,* 754 F.2d at 1105-1107. Plaintiff cannot demonstrate that Caucasian Senior Managers reporting to Quirke were similarly situated, much less that they were treated more favorably.

Plaintiff became the Senior Manager responsible for the BCB station on January 15, 2000. (Ex. 1, P. dep., p. 84, l. 10- p. 85, l. 7; Ex. 2, Offer letter). As the Senior Manager, Plaintiff was accountable for the performance of the BCB station. (Ex. 1, P. dep., p. 51, ll. 8-13; p. 52, ll.16-21; p. 53, ll.1-21; p. 54, ll. 1-19; p. 56, ll. 19-21; p. 57, ll. 1-21; p. 58, l. 1; p. 59, ll. 18-20; p. 61, ll. 1-11; p. 323, l. 1-p. 325, l. 21; Ex. 3, Quirke Decl., ¶ 2). Plaintiff understood that he would be disciplined for failure of stations under his supervision to meet performance goals. (Ex. 1, P. dep., p. 325, ll. 6-21; p. 327, ll. 8-11). Indeed, Plaintiff received multiple disciplinary counselings and a low Performance Evaluation from Directors other than Pat Quirke when stations under his supervision failed to meet performance expectations.[2] (Exs. 4-11; Ex. 12, Braslow Decl., ¶ 2 and Attachment A thereto).

Finance and Engineering set performance expectations for the BCB station.[3] (Ex. 1, P. dep., p. 85, ll. 8-21, p. 86, ll. 1-9; Ex. 3, Quirke Decl., ¶¶ 3-5). FedEx communicated these expectations to Plaintiff in a Functional Operating Plan ("FOP"), budget plan, Management by Objectives ("MBO") goals, and through regularly scheduled Senior Manager meetings with Pat Quirke. (Ex. 1, P. dep., p. 85, l. 8-p. 88, l. 7; p. 100, ll. 12-19; p. 102, l. 4-p. 104, l. 3; Ex. 3, Quirke Decl., ¶¶ 4-7). Plaintiff admits that the BCB station's performance did not meet established performance expectations during his entire tenure as a Senior Manager over this station. (Ex. 1, P. dep., p. 118, l. 1-p. 120, l. 1; p. 123, ll. 5-9, 13-15; p. 124, ll. 6-14; Ex. 3, Quirke Decl., ¶ 8 and Attachment A thereto).

In addition to the BCB station's consistent failure to meet performance expectations under Plaintiff's management, Plaintiff's Vice President, John Formisano, and Senior Vice President, Ken May,

---

[2]    At his deposition, Plaintiff testified that Mike Reed (AA), Cathy Walton (AA), and Jeffrey Brown (AA), the Directors who issued this discipline and low Performance Evaluation, did not discriminate against him, harass him, or treat him unfairly in any way. (Ex. 1, P. dep., p. 42, ll. 13-21; p. 43, ll.1-5, 15-21; p. 44, ll.1-21; p. 48, ll. 15-21; p. 49, ll. 1-18).

received complaints from BCB hourly employees in August 2000 regarding management's treatment of them and overall conditions at the BCB station. (Ex. 3, Quirke Decl., ¶ 9 and Attachment B thereto). As a result of these complaints, Formisano instructed Quirke to investigate the employee complaints, and to resolve the issues at BCB. (*Id*.). Quirke and the Personnel Representative responsible for the BCB station, Gay Burvis, held a station meeting attended by approximately 65 BCB hourly employees on October 7, 2000. (*Id*. at ¶¶ 10-11; Ex. 13, Burvis Decl., ¶ 2). At this meeting, employees raised multiple complaints regarding Plaintiff's management style, demeanor, and treatment of hourly employees. (Ex. 3, Quirke Decl., ¶ 11; Ex. 13, Burvis Decl., ¶ 3).

Based on the employee complaints surfaced in the October 7, 2000 meeting, Quirke met with Plaintiff on October 10, 2000 to discuss ways in which Plaintiff could improve the performance of the BCB station and Plaintiff's relationship with BCB hourly employees. (Ex. 1, P. dep., p. 176, ll. 3-9; Ex. 3, Quirke Decl., ¶ 12). Quirke also offered Plaintiff an opportunity to step down to a lower level Senior Manager position, in lieu of discipline for performance deficiencies. (Ex. 3, Quirke Decl., ¶ 13; Ex. 1, P. dep., p. 210, ll. 2-19). Quirke made this offer due to the severity of the problems at BCB. (Ex. 3, Quirke Decl., ¶ 13). Plaintiff rejected Quirke's offer of a lower level Senior Manager position. (Ex. 1, P. dep., p. 210, ll. 2-19).

Pursuant to FedEx's Performance Improvement Policy ("PIP"), Quirke required Plaintiff to submit a Performance Agreement, detailing the specific steps that Plaintiff would take to improve his performance deficiencies. (*Id*. at p. 177, l. 8-p. 178, l. 19; Ex. 3, Quirke Decl., ¶ 14 and Attachment C thereto). Quirke provided Plaintiff with two days off with pay to complete a Performance Agreement.

---

[3]     Plaintiff had input in setting the performance expectations set forth in the FOP. (Ex. 1, P. dep., p. 85, l. 8-p. 87, l. 15).

(Ex. 3, Quirke Decl., ¶ 15; Ex. 1, P. dep., p. 178, ll. 20-21; p. 179, ll. 1-2). On October 13, 2000, Plaintiff provided Quirke with a Performance Agreement. (Ex. 1, P. dep., p. 179, ll. 3-15; Ex. 14; Ex. 3, Quirke Decl., ¶ 16). Plaintiff's Performance Agreement was unacceptable to Quirke because it did not set forth the specific problems that Plaintiff needed to address at the BCB station, did not set forth in specific detail the steps that Plaintiff would take to improve the problems, and contained no statement of commitment to achieve specific goals within a designated time frame. (Ex. 3, Quirke Decl., ¶ 16). Pursuant to FedEx's PIP, Quirke could have terminated Plaintiff's employment for failure to submit a Performance Agreement acceptable to Quirke. (Ex. 3, Quirke Decl., ¶ 17 and Attachment C). Instead, Quirke revised Plaintiff's Performance Agreement and discussed the specific requirements of the Agreement with Plaintiff. (*Id*.). Plaintiff signed the October 17, 2000 revised Performance Agreement, and agreed to follow it. (Ex. 1, P. dep., p. 182, l. 1-p. 184, l. 10; Ex. 15; Ex. 3, Quirke Decl., ¶ 17).

Despite Plaintiff's agreement to follow the October 17, 2000 revised Performance Agreement, Plaintiff admittedly did not do so. (Ex. 1, P. dep., p. 189, 1l. 3-12; p. 194, ll. 11-21; p. 195, ll. 13-15; p. 196, ll. 14-20; p. 199, ll. 3-7, 13-21; p. 200, ll. 1-3; p. 201, ll. 9-21; p. 202, ll. 1-16; p. 209, ll. 13-17; Ex. 3, Quirke Decl., ¶¶ 18-23). Under FedEx's PIP, failure to follow a Performance Agreement may result in termination of employment. (Ex. 3, Quirke Decl., ¶ 24 and Attachment C thereto). Instead of terminating Plaintiff's employment, Quirke issued Plaintiff a Warning Letter on January 8, 2001 for

failure to follow the October 17, 2000 Performance Agreement.[4]  (Ex. 3, Quirke Decl., ¶¶ 24, 25 & n.1; Ex. 16; Ex. 16A).

Plaintiff's performance did not improve in January 2001, nor did Plaintiff make an effort to comply with his October 17, 2000 Performance Agreement.  (Exhibit 3, Quirke Decl., ¶ 26; Ex. 1, P. dep., p. 118, l. 1-p. 120, l. 1; p. 123, ll. 5-9, 13-15; p. 124, ll. 6-14; p. 189, ll. 3-12; p. 194, ll. 11-21; p. 195, ll. 1-15; p. 196, ll. 14-20; p. 199, ll. 3-7, 13-21; p. 200, ll. 1-3; p. 201, ll. 9-21; p. 202, ll. 1-16; p. 209, ll. 13-17).  Quirke explained to Plaintiff that he would be receiving a Performance Evaluation in February 2001, and that the evaluation was likely to be unfavorable unless Plaintiff made marked improvements in his performance.  (Ex. 3, Quirke Decl., ¶ 26).  Pursuant to FedEx's Termination policy, Quirke offered Plaintiff a severance agreement on February 1, 2001, if Plaintiff chose to resign rather than face additional discipline for continued performance deficiencies.  (Ex. 3, Quirke Decl., ¶ 27 and Attachment E thereto).  Plaintiff rejected the severance package.  (Ex. 1, P. dep., p. 213, ll. 9-14).

On February 19, 2001, Quirke gave Plaintiff a Performance Evaluation.  (Ex. 1, P. dep., p. 296, ll. 11-20; Ex. 17).  Quirke rated Plaintiff's overall performance as unsatisfactory, based upon Plaintiff's

---

[4]      Under FedEx policy, a Warning Letter is issued to discipline employees for conduct related problems.  (Ex. 3, Quirke Decl., ¶¶ 24, 25 & n.1 and Attachment D thereto).  Performance Reminders are issued to discipline employees for performance deficiencies.  (*Id*. at ¶ 14 and Attachment C thereto). Quirke issued Plaintiff a Warning Letter instead of a Performance Reminder because he believed that Plaintiff untruthfully represented to Quirke that Plaintiff was following the Performance Agreement when, in fact, he was not.  (Ex. 3, Quirke Decl., ¶ 24).  Plaintiff submitted a complaint through FedEx's internal grievance procedure, the GFTP, claiming that his failure to follow the Performance Agreement was a performance issue, not a conduct issue and, therefore, that issuance of a Warning Letter was unfair.  (Ex. 1, P. dep., p. 218, ll. 3-21; p. 219, l. 1).  The decisionmaker at Step II of Plaintiff's GFT, John Formisano, directed Quirke to rescind the Warning Letter and to issue a Performance Reminder instead.  (Ex. 3, Quirke Decl., ¶ 25; Ex. 16A).  Quirke did as Formisano directed, and Plaintiff did not proceed to Step III of the GFTP.  (Ex. 3, Quirke Decl., ¶ 25; Ex. 1, P. dep., p. 292, ll. 4-17).

ailure to improve the problems that Quirke addressed with Plaintiff beginning in October 2000. (Ex. 3, Quirke Decl., ¶ 28).

Pursuant to FedEx's PIP, Quirke issued Plaintiff a Performance Reminder based on the continued performance deficiencies noted in Plaintiff's Performance Evaluation. (*Id.*; Ex. 18). Quirke required Plaintiff to submit a second Performance Agreement detailing the steps that Plaintiff intended to take to remedy the continued problems at BCB. (Ex. 3, Quirke Decl., ¶ 29 and Attachment C thereto; Ex. 18). Plaintiff submitted a Performance Agreement on February 20, 2001. (Ex. 1, P. dep., p. 303, ll. 18-21; p. 304, ll. 1-8; Ex. 19). Quirke rejected this Agreement because it, like the one Plaintiff submitted on October 13, 2000, failed to set forth the specific problems that Plaintiff needed to remedy, failed to provide specifics as to how Plaintiff would fix the problems at the BCB station, and failed to express Plaintiff's commitment to achieving specific goals within a designated time frame. (Ex. 3, Quirke Decl., ¶ 29; Exs. 18, 19). Quirke again explained his expectations for an acceptable Performance Agreement to Plaintiff, and gave Plaintiff another opportunity to draft a Performance Agreement acceptable to Quirke. (Ex. 3, Quirke Decl., ¶ 30; Ex. 20). Plaintiff submitted a second Performance Agreement on February 23, 2001, and admittedly refused to include the requirements that Quirke requested. (Ex. 1, P. dep., p. 309, l. 4-p. 310, l. 6; p. 311, l. 15-p. 312, l. 19; Ex. 21; Ex. 3, Quirke Decl., ¶ 31).

Quirke suspended Plaintiff on February 23, 2001, pending investigation into Plaintiff's failure to submit an acceptable Performance Agreement. (Ex. 3, Quirke Decl., ¶ 32; Ex. 22). Quirke issued Plaintiff a Performance Reminder/Termination Letter on February 26, 2001 for failure to submit an acceptable Performance Agreement. (Ex. 1, P. dep., p. 319, ll. 10-19; Ex. 23; Ex. 3, Quirke Decl., ¶ 33). Plaintiff's February 26, 2001 letter was his third disciplinary letter in a 12 month time frame, a termination offense under FedEx's PIP. (Ex. 3, Quirke Decl., ¶ 33 and Attachment C thereto).

Likewise, failure to submit an acceptable Performance Agreement is a termination offense under FedEx's PIP. (*Id.*). Accordingly, Quirke terminated Plaintiff's employment. (Ex. 1, P. dep., p. 319, ll. 10-19; Ex. 23; Ex. 3, Quirke Decl., ¶ 33).

Plaintiff claims that Quirke discriminated against him based on his race by placing him on a performance improvement plan in October 2000, by issuing Plaintiff a disciplinary write up in January 2001, by issuing Plaintiff a Performance Evaluation with unacceptable ratings in February 2001, by issuing Plaintiff a disciplinary write up in February 2001, and by terminating Plaintiff's employment in February 2001. (Ex. 1, P. dep., p. 327, ll. 12-21; p. 337, ll. 9-13; p. 344, ll. 2-5; p. 346 l. 21- p. 347, l. 3; p. 353, ll. 13-15). Plaintiff's sole basis for this claim is his unfounded belief that Charles Hergesheimer (C) and Clint Barnes (C), Senior Managers under Quirke's supervision whose stations were allegedly performing poorly, were not required to submit Performance Agreements, disciplined, issued unacceptable Performance Evaluation ratings, or terminated. (Ex. 1, P. dep., p. 222, ll. 9-21; p. 223, ll. 1-5). Plaintiff claims that Pat Lewis (AI) was "possibly" treated more favorably than he was. (*Id*. at p. 227, ll. 12-21, p. 228, ll. 1-15).

### 1.    Caucasian Senior Managers Reporting To Quirke Were Not Similarly Situated To Plaintiff

A similarly situated employee is one who is subject to the same standards, has the same position and the same job duties, has dealt with the same supervisor, and has engaged in the same conduct without differentiating or mitigating circumstances that would distinguish the employee's conduct from the plaintiff's or his supervisor's treatment for the conduct. *Moore*, 754 F.2d at 1105-06; *Mitchell v. Toledo Hosp*., 964 F.2d 577 (6th Cir. 1992). The plaintiff and the employee with whom he compares himself must be similarly situated in all material respects. *Heyward v. Monroe*, No. 97-2430, 1998 U.S.

App. LEXIS 30855 (4th Cir. Dec. 7, 1998) (copy attached), *cert. denied*, 527 U.S. 1036 (1999). Clint Barnes, Charles Hergesheimer, and Pat Lewis were not similarly situated to Plaintiff.

Clint Barnes (C) was the Senior Manager over the DCA station from January 1, 2000 until October 15, 2001. (Ex. 24, Barnes Decl., ¶ 3). His direct supervisor during this time period was Quirke. (Ex. 24, Barnes Decl., ¶ 3; Ex. 3, Quirke Decl., ¶ 35). Throughout Barnes' tenure as a Senior Manager over the DCA station, Quirke held regular conference calls or meetings with the Senior Managers in the Capital District to discuss station performance. (Ex. 24, Barnes Decl., ¶ 4).

On February 19, 2001, Quirke issued Barnes a Performance Evaluation with unsatisfactory ratings in two of ten categories of performance--productivity and safety performance. (Ex. 24, Barnes Decl., ¶ 5). Barnes' overall Evaluation score was above satisfactory. (*Id.*). Quirke required Barnes to submit a Performance Agreement detailing how Barnes intended to remedy the performance deficiencies noted in Barnes' February 2001 Performance Evaluation. (Ex. 3, Quirke Decl., ¶ 36; Ex. 24, Barnes Decl., ¶ 5). Barnes submitted an acceptable Performance Agreement on February 27, 2001. (Ex. 3, Quirke Decl., ¶ 36; Ex. 24, Barnes Decl., ¶ 6). Quirke followed up with Barnes in March and April 2001 to monitor Barnes' progress in improving productivity and safety at the DCA station. (Ex. 3, Quirke Decl., ¶ 36; Ex. 24, Barnes Decl., ¶ 6).

Although Barnes followed his February 2001 Performance Agreement and the DCA station made slight improvements, Barnes did not achieve the improvements that Quirke anticipated. (Ex. 24, Barnes Decl., ¶ 6; Ex. 3, Quirke Decl., ¶ 37). Quirke required Barnes to submit a second Performance Agreement in May 2001. (Ex. 24, Barnes Decl., ¶ 6; Ex. 3, Quirke Decl., ¶ 37). Barnes submitted a detailed Performance Agreement on May 22, 2001, and Quirke accepted the Agreement. (Ex. 24, Barnes Decl., ¶ 6; Ex. 3, Quirke Decl., ¶ 37). Quirke monitored Barnes' adherence to the May 2001

Performance Agreement in May and June 2001.  (Ex. 24, Barnes Decl., ¶ 7; Ex. 3, Quirke Decl., ¶ 38).

Barnes achieved some, but not all, of the results required under the May 22, 2001 Performance

Agreement, even though he followed the Agreement.  (Ex. 24, Barnes Decl., ¶ 7; Ex. 3, Quirke Decl., ¶

38).  Accordingly, Quirke issued Barnes a Performance Reminder on July 5, 2001.  (Ex. 24, Barnes

Decl., ¶ 7; Ex. 3, Quirke Decl., ¶ 38).

For personal reasons, Barnes requested that Quirke allow him to demote to a lower level

position, shortly after he received the July 5, 2001 Performance Reminder.  (Ex. 24, Barnes Decl., ¶ 8;

Ex. 3, Quirke Decl., ¶ 39).  Quirke offered Barnes a Grade Level 26 Manager position at the NYG

station in Springfield, Virginia.  (Ex. 24, Barnes Decl., ¶ 8; Ex. 3, Quirke Decl., ¶ 39).  Barnes accepted

Quirke's offer of demotion to a Manager position, a three grade level reduction in pay.  (Ex. 24, Barnes

Decl., ¶ 8).  Barnes remains employed with FedEx as a Manager.  (*Id*.).

Barnes is not similarly situated with Plaintiff.  Barnes, unlike Plaintiff, had an overall

satisfactory Performance Evaluation score in February 2001 with only two areas of performance that

needed to be addressed.  Plaintiff, in contrast, had multiple performance deficiencies, an overall

unsatisfactory Performance Evaluation score, and serious interpersonal difficulties with employees at the

BCB station.  Barnes, unlike Plaintiff, submitted an acceptable Performance Agreement to Quirke in

February 2001 and May 2001.  Barnes, unlike Plaintiff, followed his Performance Agreements and

submitted documentation to Quirke that he was following his Agreement.  Barnes, unlike Plaintiff,

requested a demotion and accepted the lower-level position that Quirke offered him when it became

apparent to Barnes that he would receive additional discipline if he failed to make the performance

improvements that Quirke expected.  Had Plaintiff accepted demotion to a lower level Senior Manager

position, a two grade level reduction in pay, he too would still be employed with FedEx, presuming that

his performance in his new position met established performance expectations. (Ex. 3, Quirke Decl., ¶ 40).

Charles Hergesheimer (C) was a Senior Manager at the NDV station in Alexandria, Virginia from January 1, 2001 until the end of June 2001. (Ex. 25, Hergesheimer Decl., ¶¶ 2-3). During this time period, Quirke was Hergesheimer's direct supervisor. (Ex. 3, Quirke Decl., ¶ 41). Throughout Hergesheimer's tenure as Senior Manager of the NDV station, Quirke held frequent conference calls and meetings with all of the Senior Managers in the Capital District to discuss station performance and performance expectations. (Ex. 25, Hergesheimer Decl., ¶ 4).

In June 2001, Quirke discussed the NDV station's failure to meet Quirke's expectations for improvements in performance with Hergesheimer. (*Id.* at ¶¶ 5-6). In June 2001, Quirke told Hergesheimer to step down from his Senior Manager position at the NDV station. (Ex. 25, Hergesheimer Decl., ¶ 7; Ex. 3, Quirke Decl., ¶ 42). Hergesheimer stepped down from the NDV Senior Manager position at the end of June 2001, and searched for a lower grade level Senior Manager position during July 2001. (Ex. 25, Hergesheimer Decl., ¶ 8; Ex. 3, Quirke Decl., ¶ 42). Hergesheimer was advised that, if he did not find a job by the beginning of August 2001, FedEx would terminate his employment. (Ex. 25, Hergesheimer Decl., ¶ 8). Hergesheimer accepted a Grade Level 26 Manager position at the CGS station in Beltsville, Maryland, effective August 1, 2001, because he was not offered any other positions. (Ex. 25, Hergesheimer Decl., ¶ 8; Ex. 3, Quirke Decl., ¶ 42). The CGS position was a three level reduction in salary. (Ex. 25, Hergesheimer Decl., ¶ 8; Ex. 3, Quirke Decl., ¶ 42). Hergesheimer remains employed with FedEx as a Manager. (Ex. 25, Hergesheimer Decl., ¶ 9).

Hergesheimer was not similarly situated with Plaintiff. Hergesheimer, unlike Plaintiff, had been a Grade Level 29 Senior Manager for little more than five months when Quirke told him to step down.

Plaintiff had been a Grade level 29 Senior Manager, and had failed to achieve performance expectations set for BCB, for over one year prior to receiving discipline for performance deficiencies from Quirke. Hergesheimer, unlike Plaintiff, stepped down from his Senior Manager position, and demoted to a Manager position.

Pat Lewis (AI) was a Grade Level 27 Senior Manager over Dispatch under Quirke's direct supervision from July 1, 2000 until approximately June 2002. (Ex. 3, Quirke Decl., ¶ 34). A Grade Level 27 Senior Manager has less responsibilities than a Grade Level 29 Manager, commensurate with the lower level of pay that a Grade Level 27 Senior Manager receives. (*Id.*). As the Senior Manager over Dispatch, Lewis did not have responsibility for stations or station productivity. (*Id.*). Mr. Lewis' performance was above satisfactory when he reported to Quirke. (*Id.*).

Lewis was not similarly situated with Plaintiff. Unlike Plaintiff, Lewis held a lower level Senior Manager position with correspondingly less difficult duties. Lewis, unlike Plaintiff, was not responsible for a station. Lewis' performance, unlike Plaintiff's, was above satisfactory when he reported to Quirke.

Plaintiff cannot demonstrate that Barnes, Hergesheimer, and/or Lewis were similarly situated in all material respects, as necessary to establish element three of his *prima facie* case.[5] *Moore*, 754 F.2d at 1105-06; *Heyward*, 1998 U.S. LEXIS 30855, at *5-7. Accordingly, Plaintiff's race discrimination claim should be dismissed.

> ### 2.    Assuming, *Arguendo*, That Hergesheimer and Barnes Were Similarly Situated To Plaintiff, Plaintiff Cannot Demonstrate That They Were Treated More Favorably

---

[5]    The uniqueness of Plaintiff's situation does not constitute evidence of race discrimination. *Moore*, 754 F.2d at 1109-10. Plaintiff was the only Senior Manager reporting to Quirke that Quirke terminated because Plaintiff, unlike the other Senior Managers whose stations were under-performing, refused the demotion that Quirke offered.

As explained in section V.A.1. above, Quirke disciplined Senior Managers reporting to him consistently, regardless of race. Plaintiff cannot demonstrate that FedEx enforced disciplinary measures against Plaintiff more severely than against non-members of the protected class, as necessary to establish a *prima facie* case of race discrimination. Admittedly, Plaintiff has no evidence to support his claims of differential treatment. (*Id.* at p. 223, ll. 6-18; p. 225, ll. 5-13; p. 226, ll. 15-21; p. 227, ll. 1-11). Thus, Plaintiff's race discrimination claims should be dismissed.

**B.    Plaintiff Cannot Establish That FedEx Subjected Him To an Adverse Action**

To establish that he has been subjected to an adverse action, Plaintiff must demonstrate that FedEx subjected him to conduct that negatively alters the essential terms, conditions, or benefits of his employment. *Von Guten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001). An employer's enforcement of its policies as they pertain to the plaintiff is not an adverse action. *Id.* A plaintiff cannot establish that his employer subjected him to an adverse action when he admittedly violated company policy. *Matvia v. Bald Head Isld. Mgmt.*, 259 F.3d 261, 272 (4th Cir. 2001).

Plaintiff admits that the performance of the BCB station did not meet established performance standards during the one year and two months that Plaintiff was the Senior Manager responsible for this station. (Ex. 1, P. dep., p. 118, l. 1-p. 120, l. 1; p. 123, ll. 5-9, 13-15; p. 124, ll. 6-14). Plaintiff admits that, as the Senior Manager over the BCB station, he was accountable for station performance. (*Id.* at p. 51, ll. 8-13; p. 52, ll. 16-21; p. 53, ll. 1-21; p. 54, ll. 1-19; p. 56, ll. 19-21; p. 57, ll. 1-21; p. 58, l. 1; p. 59, ll. 18-20; p. 61, ll. 1-11; Ex. 3, Quirke Decl., ¶ 2). Plaintiff admits that he understood that he would receive discipline if he failed to meet performance expectations. (Ex. 1, P. dep., p. 325, ll. 6-21; p. 327, ll. 8-11). Plaintiff admits that he did not follow the Performance Agreement that he signed on October 17, 2000, despite his agreement to do so. (Ex. 1, P. dep., p. 189, ll. 3-12; p. 194, ll. 11-21; p. 195, ll. 13-

15; p. 196, ll. 14-20; p. 199, ll. 3-7, 13-21; p. 200, ll. 1-3; p. 201, ll. 9-21; p. 202, ll. 1-16; p. 209, ll. 13-17; Ex. 3, Quirke Decl., ¶¶ 18-23).  Plaintiff admits that he did not include the requirements that Quirke requested in Plaintiff's February 20 and 23, 2001 Performance Agreements.  (Ex. 1, P. dep., p. 309, l. 4- p. 310, l. 6; p. 311, l. 15-p. 312, l. 19).

FedEx's PIP sets out the prescribed discipline for performance deficiencies, failure to follow Performance Agreements, and failure to submit an acceptable Performance Agreement.  (Ex. 3, Quirke Decl., ¶ 45 and Attachment C).  Plaintiff received the prescribed discipline for his performance deficiencies.  (*See* Section V.A. above).  Enforcement of FedEx's generally applicable PIP policy does not constitute adverse action.  *Von Gunten*, 243 F.3d at 869; *Matvia*, 259 F.3d at 272.

Plaintiff has likewise failed to establish any basis for his claim that application of FedEx's PIP was racially motivated.  Indeed, the same Director who disciplined Plaintiff promoted two African American Senior Managers to higher level Senior Manager positions, and recruited African American Senior Manager Keith Jackson for a Grade 29 Senior Manager position at the NDV station.  (Ex. 3, Quirke Decl., ¶ 46).  Of the eight Senior Managers who reported to Quirke during Plaintiff's tenure as Senior Manager at BCB, only two were Caucasian.  (*Id*. at ¶ 47).  Quirke disciplined and/or demoted both Caucasian Senior Managers.  (*Id*. at ¶¶ 35-39, 41-42).  Accordingly, Plaintiff's claims should be dismissed.

## VI.    PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION

To establish a *prima facie* case of retaliation, Plaintiff must establish:  (1) he engaged in protected activity; (2) FedEx took an adverse action against him; (3) a causal connection exists between Plaintiff's protected activity and the adverse action at issue.  *Matvia*, 259 F.3d at 271.  Plaintiff cannot establish elements one and three of his claim.

A.    **Protected Activity**

To demonstrate that he engaged in a protected activity, Plaintiff must establish that he opposed an unlawful employment practice or that he participated in a Title VII proceeding, investigation, or hearing prior to his discipline and termination. *Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). It is undisputed that Plaintiff did not participate in any Title VII proceeding, investigation or hearing prior to his discipline and termination. (Ex. 1, P. dep., p. 244, l. 4-p. 246, l. 8; p. 256, ll. 3-17; p. 269, ll. 10-16; Ex. 3, Quirke Decl., ¶¶ 44, 48-52). Accordingly, Plaintiff must establish that he opposed an unlawful employment practice to establish element one of his *prima facie* case. Plaintiff cannot meet this burden.

Here, Plaintiff claims that Quirke retaliated against him because he told Quirke that Manager Rva Pendleton (AA) should receive a documented counseling rather than a Warning Letter for escalating an altercation with subordinate employee Noelle Olson. (Ex. 1, P. dep., p. 244, l. 4-p. 246, l. 8; p. 256, ll. 3-17). Plaintiff also claims that he questioned why Manager Clifton Dalton (C), who allegedly also dealt with Olson, was not receiving a Warning Letter. (*Id.* at p. 244, l. 4-p. 246, l. 8; p. 256, ll. 3-17). Plaintiff admittedly did not tell Quirke that he believed the discipline administered to Pendleton was racially motivated. (*Id.* at p. 256, ll. 18-21; p. 257, ll. 1-2).

In *Adams v. Giant Foods, Inc.*, 225 F. Supp. 2d 600, 605 (D. Md. 2002), the male plaintiffs claimed that they had engaged in protected activity by complaining to their managers that certain female employees were not disciplined or terminated. The *Adams* court held that the plaintiffs' complaints amounted to complaints of favoritism towards a few specific employees and noted that favoritism does not constitute a violation of Title VII. *Id.* The *Adams* court further held that the plaintiffs could not establish a claim of retaliation because plaintiffs could not have had a subjectively and objectively good

faith belief that favoritism was an unlawful employment practice and, therefore, dismissed the plaintiffs' retaliation claims. *Id*.

Here, as in *Adams*, Plaintiff admittedly did no more than complain that a specific employee, Dalton, was treated with favoritism. There is no evidence that Plaintiff had a good faith belief that this purported favoritism was an unlawful employment practice. Viewing the conduct at issue here objectively, a reasonable person would not have believed that favoritism was an unlawful employment practice. Accordingly, Plaintiff's claims of retaliation based upon this alleged "protected activity" should be dismissed.

Plaintiff further claims that Quirke retaliated against him for reporting to Quirke that Manager Clifton Dalton told Plaintiff that an hourly, non-management employee, Bobby Richesin (C), told Dalton that he "put that nigger in his place," allegedly referring to Plaintiff. (Ex. 1, P. dep., p. 269, ll. 10-16; Ex. 3, Quirke Decl., ¶¶ 51-52). Plaintiff's alleged complaint to Quirke does not constitute protected activity.

In *Little v. United Techs.*, 103 F.3d 956, 959 (11th Cir. 1997), the court explained that, to constitute protected activity under Title VII, the conduct complained of must be an unlawful employment practice *of the employer*. The *Little* court further explained that opposition to a single comment by a co-worker is not protected activity. *Id*. The *Little* court held that the plaintiff could not have had a subjectively and objectively good faith belief that a single comment violated Title VII and, therefore, dismissed the plaintiff's retaliation claim. *Id*. at 959-60. *See Fitch v. Solipsys Corp.*, 94 F. Supp. 2d 670, 677-78 (D. Md. 2000).

Similarly, Plaintiff's report of a single alleged racial comment by a non-management subordinate does not constitute protected activity. Plaintiff likewise could not have had a subjectively or objectively

good faith belief that a single alleged comment violated Title VII.  Indeed, Plaintiff could not have had a good faith belief that any conduct on the part of FedEx violated Title VII, particularly given that FedEx took prompt and effective action to suspend Richesin, investigate Richesin's alleged conduct, and to prevent any recurrence of the alleged misconduct.  (Ex. 13, Burvis Decl., ¶¶ 4-5).  Richesin never came back to work at FedEx.  (*Id.* at ¶¶ 4-5; Ex. 3, Quirke Decl., ¶ 52).

Additionally, an employee must advocate statutory rights in a manner that is adverse to the interests of his employer in order to establish "protected conduct*." Clark County School District v. Breeden*, 532 U.S. 268, 271 (2001), *reh'g denied*, 533 U.S. 912 (2001).  *See McKenzie v. Renberg's, Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996) (discussing adverse action in the context of an FLSA claim), *cert. denied*, 520 U.S. 1186 (1997).  An employee who merely takes action in performance of his job is not engaging in protected conduct within the meaning of Title VII.  *See Breeden*, 532 U.S. at 271; *McKenzie*, 94 F.3d at 1486.

Here, Plaintiff did no more than his job as Senior Manager required--he expressed his opinion on discipline to be administered to Managers reporting to him and reported a racial remark allegedly made by a non-management subordinate under his supervision.  As Plaintiff admits, these are activities that fall within his responsibility as a Senior Manager.  (Ex. 1, P. dep., p. 23, ll. 16-21; p. 24, ll. 1-21; p. 25, ll. 1-15; p. 365, ll. 10-18).  Accordingly, Plaintiff cannot establish element one of his *prima facie* case of retaliation.

### B.    Causal Connection

To establish a causal connection, Plaintiff must demonstrate that FedEx took adverse action against him because of his alleged protected activity.  *Nichols v. Harford County Bd. of Ed.*, 189 F. Supp. 2d 325, 344-45 (D. Md. 2002).  Temporal proximity alone is not enough to establish causation.

*Tolley v. Health Care and Retirement Corp.*, No. 96-2094, 1998 U.S. App. LEXIS 866, at *10-11 (4th Cir. Jan. 21, 1998) (copy attached).

Here, Plaintiff admittedly has no evidence to support his claim that he received discipline and was terminated as a result of raising issues regarding Rva Pendleton's discipline with Quirke and/or reporting Bobby Richesin's alleged comment to Quirke. (Ex. 1, P. dep., p. 223, ll. 6-18; p. 225, ll. 5-13; p. 226, ll. 15-21; p. 227, ll. 1-11; p. 260, ll. 2-15; p. 336, l. 4-p. 339, l. 6; p. 342, ll. 15-19; p. 344, l. 6-p. 348, l. 20; p. 352, l. 2-p. 356, l. 16). Here, as in *Tolley*, timing alone is insufficient to establish causation.[6]

In any event, Quirke became aware of circumstances that led to Plaintiff's discipline and eventual termination in August of 2000, when Vice President John Formisano apprised Quirke of BCB employee complaints regarding BCB management. (Ex. 3, Quirke Decl., ¶ 9). Where, as here, an employer contemplates discipline before the plaintiff engages in alleged protected activity, the timing of the discipline does not constitute evidence of causation. *Breeden*, 532 U.S. at 272. As the United States Supreme Court explained in *Breeden*, "[e]mployers need not suspend previously planned [discipline] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id*.

Further, other Senior Managers under Quirke's supervision who had not engaged in protected conduct received discipline for performance deficiencies. (Ex. 3, Quirke Decl., ¶¶ 35-39, 41-42; Ex. 24,

---

[6] Even if this Court were to find that timing alone is sufficient to establish causation, approximately four months passed between Plaintiff's alleged protected activity and his January 2001 Performance Reminder, February 2001 Performance Evaluation and Performance Reminder, and February 2001 termination. (Ex. 3, Quirke Decl., ¶¶ 48-52). The passage of four months destroys any inference of causal connection. *Conner v. Schnuck Markets, Inc*., 121 F.3d 1390, 1395 (10th Cir. 1997); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992).

Barnes Decl., ¶¶ 1-8; Ex. 25, Hergesheimer Decl., ¶¶ 1-9).    Accordingly, Plaintiff cannot establish that he received discipline and was terminated because of his alleged protected activity, and Plaintiff's retaliation claim should be dismissed.

## VII.    PLAINTIFF CANNOT DEMONSTRATE PRETEXT

Once the plaintiff has established a *prima facie* case of discrimination or retaliation, the burden of production—but not proof—shifts to the defendant to articulate reasons which, if taken as true, provide legitimate nondiscriminatory and non-retaliatory bases for the employer's actions.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 1825 (1973).  If the defendant comes forward with legitimate, nondiscriminatory and non-retaliatory reasons for its decisions, as FedEx has done here, the plaintiff must establish that the employer's proffered reasons were pretextual.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 512-13, 113 S. Ct. 2742, 2750-51 (1993).

As explained in section V.A. above, FedEx had legitimate, non-discriminatory and non-retaliatory reasons for its employment decisions involving Plaintiff.  Even if management was incorrect in believing that Plaintiff violated company policy (which it was not), mistaken beliefs do not establish pretext.  *Holder v. Raleigh*, 867 F.2d 823, 829 (4th Cir. 1989*); Pollard v. Rea Magnet Wire Co*., 824 F.2d 557, 559 (7th Cir.), *cert. denied*, 484 U.S. 977 (1987).  Likewise, Plaintiff's disagreement with Quirke's assessment of his performance and/or the severity of his discipline does not establish pretext.  *Beall v. Abbott Labs*, 130 F.3d 614, 619-20 (4th Cir. 1997).

At all times, Plaintiff bears the burden of demonstrating that the true reason for FedEx's treatment of him was intentional discrimination or retaliation.  *St. Mary's Honor Ctr.*, 509 U.S. at 519.  Plaintiff's conclusory allegations of racial discrimination and retaliation are insufficient to meet his

burden. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Plaintiff has no basis for his belief that his race or alleged retaliation was the reason for the employment actions at issue here. (Ex. 1, P. dep., p. 223, ll. 6-18; p. 225, ll. 5-13; p. 226, ll. 15-21; p. 227, ll. 1-11; p. 260, ll. 2-15; p. 336, l. 4-p. 339, l. 6; p. 342, ll. 15-19; p. 344, l. 6-p. 348, l. 20; p. 352, l. 2-p. 356, l. 16). Likewise, Plaintiff has failed to come forward with any evidence that FedEx's stated reasons for its actions were pretextual. Accordingly, Plaintiff's race discrimination and retaliation claims should be dismissed as a matter of law. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S. Ct. 2097 (2000).

## VIII.  PLAINTIFF CANNOT DEMONSTRATE A PRIMA FACIE CASE OF HARASSMENT UNDER TITLE VII

To establish a claim for racial harassment, Plaintiff must establish: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with his work performance or created a hostile or offensive work environment that was sufficiently severe and pervasive; and (5) respondeat superior liability. *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 106 S. Ct. 2399 (1986); *Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994). Plaintiff cannot meet this standard.

### A.    Plaintiff Cannot Establish Severe or Pervasive Harassment

A hostile work environment exists when the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the terms of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 370-71 (1993). As the United States Supreme Court explained in *Faragher v. Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284 (1998), this standard is designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language." To demonstrate severe and pervasive harassment, the plaintiff must demonstrate that his

work environment was both subjectively hostile, in that the plaintiff perceived his work environment as hostile, and objectively hostile, so that a reasonable person in the plaintiff's position would view his treatment as hostile. *Id*. at 787-88.

Plaintiff claims that the same conduct alleged in support of his discrimination claims also establishes racial harassment. (Ex. 1, P. dep., p. 356, ll. 6-16). Following up with an employee on performance issues and issuance of discipline for performance deficiencies are ordinary workplace tribulations, not harassment. *Featherstone v. UPS*, No. 94-2331, 1995 U.S. App. LEXIS 12518, at *16 (4th Cir. May 23, 1995) (copy attached). Further, Plaintiff admittedly continued to perform his job duties despite the alleged harassment. (Ex. 1, P. dep., p. 363, ll. 15-18). Plaintiff's work environment was not sufficiently severe or pervasive to constitute a hostile work environment. *Harris*, 510 U.S. at 21-22.

### B.    Plaintiff Cannot Establish Harassment Based On Race

In *Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998), the Supreme Court explained that "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination . . . because of sex.'" *See Hawkins v. PepsiCo*, 203 F.3d 274 (4th Cir.), *cert. denied*, 531 U.S. 875 (2000) (finding that harassing conduct must be based on race to be actionable). Plaintiff cannot demonstrate that any of the conduct of which he complains was based upon race. *See* section V.A. above.

## IX.    PLAINTIFF'S PUNITIVE DAMAGES CLAIMS SHOULD BE STRICKEN

Punitive damages are available under Title VII only when the plaintiff demonstrates that his employer engaged in discriminatory activity with malice or reckless indifference to the plaintiff's federally protected rights. 42 U.S.C. § 1981a(b)(1). The plaintiff must demonstrate that his employer

acted maliciously or recklessly with the knowledge that its actions may be in violation of federal law. *Kolstad v. ADA*, 527 U.S. 526, 119 S. Ct. 2118 (1999). Further, the plaintiff must establish that his employer did not engage in good faith efforts to comply with the law. *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 442 (4th Cir.), *cert. denied*, 531 U.S. 822 (2000).

Here, it is undisputed that FedEx policy prohibits discrimination, retaliation, and harassment. (Ex. 1, P. dep., p. 23, ll. 16-21; p. 24, ll. 1-21; p. 25, ll. 1-15; Ex. 13, Burvis Decl., ¶ 6). It is undisputed that FedEx has a published EEO policy for addressing discrimination complaints, and that this policy is disseminated to all employees, including Plaintiff. (Ex. 1, P. dep., p. 23, ll. 16-21; p. 24, ll. 1-21, p. 25, ll. 1-15; p. 82, ll. 3-7; Ex. 13, Burvis Decl., ¶ 7 and Attachments A and B thereto; Ex. 26). It is undisputed that FedEx has a policy of equal employment opportunity. (Ex. 1, P. dep., p. 24, ll. 7-9). Accordingly, Plaintiff cannot establish that FedEx has failed to engage in good faith efforts to comply with Title VII, and Plaintiff's claim for punitive damages should be stricken.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's claims in their entirety.

DATED:        March 12, 2003


Respectfully submitted,


_____/s/_____

Mary Jane Palmer
Federal Express Corporation
Senior Attorney
3620 Hacks Cross
Building B, 3rd Floor
Memphis, TN  38125


_____/s/_____

Eric Hemmendinger
SHAWE & ROSENTHAL, LLP
Sun Life Building, 20 South Charles Street
Baltimore, MD  21201
410-752-1040-Telephone
410-752-8861-Facisimile

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **DEFENDANTS, FEDERAL EXPRESS CORPORATION'S AND PATRICK J. QUIRKE'S, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was electronically filed in this case on the 12th day of March 2003.  In the event that counsel for Plaintiff is not registered with the Court, a paper copy will be served upon Brian K. McDaniel, and Kevin L. Chapple, 1211 Connecticut Avenue, NW, Suite 303, Washington, DC 20036, via U.S. Mail, postage prepaid on the 12th day of March, 2003.


_____/s/_____

463277

36