IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Civil Division)

| | |
|---|---|
| MICHAEL SHIELDS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )CIVIL ACTION NO. MJG 02CV1783 |
| | ) |
| FEDERAL EXPRESS CORPORATION, | ) |
| AND PATRICK J. QUIRKE | ) |
| | ) |
| Defendants. | ) |
| | ) |

**REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDMENT**

**INTRODUCTION**

Defendants, Federal Express Corporation ("FedEx") and Patrick J. Quirke, hereby file their Reply to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment. Summary judgment in Defendants' favor is appropriate on all issues for the reasons set forth in Defendants' motion for summary judgment, accompanying memorandum and exhibits, and those set forth below. Defendants hereby incorporate all arguments and evidence set forth in their memorandum in support of summary judgment.

**I.    THIS COURT SHOULD STRIKE PLAINTIFF'S DECLARATION, SUBMITTED IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Speculation, conjecture, conclusory allegations, rumor, statements of "general consensus," and statements that are not based upon personal knowledge, do not constitute evidence for purposes of summary judgment. Fed. R. Civ. P. 56(e); *Greensboro v. Professional Fire Fighters Ass'n*, 64 F.3d 962, 967 (4th Cir. 1995); *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251-52 (4th

Cir.), *cert. denied*, 502 U.S. 939 (1991)*; Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Hearsay does not constitute evidence for purposes of summary judgment. *Greensboro*, 64 F.3d at 967. Affidavit testimony that conflicts with the plaintiff's prior sworn testimony must be stricken. *Crawford v. Union Carbide Corp.*, No. 98-2448, 1999 U.S. App. LEXIS 32483, at *14 (4th Cir. Dec. 14, 1999) (copy attached), *cert. denied*, 530 U.S. 1234 (2000). Accordingly, this Court should strike the following paragraphs of Plaintiff's Declaration for the following reasons:

**Paragraph 1**:  no personal knowledge, conclusory allegations, speculation.

**Paragraph 2**:  conclusory allegations, no personal knowledge, speculation, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages, and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  (P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1).

**Paragraph 3**:  conclusory allegations, no personal knowledge, speculation, hearsay, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1).

**Paragraph 4**:  conclusory allegations, no personal knowledge, speculation, hearsay, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1), conflicts with Plaintiff's deposition testimony that he and Quirke discussed station performance and that Plaintiff and Quirke developed a mutually agreed upon October 17, 2000 Performance Agreement to address the performance issues at the BCB station.  (*Id*. at p. 182, l. 1 - p. 184, l. 10; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit 15).

**Paragraph 5**:  conclusory allegations, no personal knowledge, speculation.

**Paragraph 6**:  conclusory allegations, no personal knowledge, hearsay, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1).

**Paragraph 7**:  conclusory allegations, hearsay, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals

that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1).

**Paragraph 8**:  conclusory allegations, no personal knowledge, hearsay.

**Paragraph 9**:  conclusory allegations, no personal knowledge.

**Paragraph 10**:  conclusory allegations, no personal knowledge, hearsay.

**Paragraph 11**:  conclusory allegations, no personal knowledge, hearsay.  Admittedly, Plaintiff was not in attendance at this meeting because it was a skip-level meeting.  (P. dep., p. 174, ll. 12-19, attached hereto as Exhibit 1).

**Paragraph 12**:  conclusory allegations, no personal knowledge, hearsay, speculation.

**Paragraph 13**:  conclusory allegations, no personal knowledge, hearsay, speculation.

**Paragraph 14**:  conclusory allegations, no personal knowledge, hearsay, speculation.  Admittedly, Plaintiff's only knowledge of Richesin's alleged comments came from what Clifton Dalton allegedly told Plaintiff.  (P. dep., p. 269, ll. 10-16, attached to MSJ Memo as Exhibit 1).  Plaintiff did not assist in the investigation regarding Richesin and was not informed of the results of the investigation because he was a purported witness.  (Ex. 1:  P. dep., p. 276, ll. 6-21; p. 277, ll. 1-15).

**Paragraph 15**:  conclusory allegations, no personal knowledge, conflicts with Plaintiff's deposition testimony that he was already responsible for the BOF station in addition to the BCB station.  (Ex. 1:  P. dep., p. 379, ll. 1-16).

**Paragraph 16**:  conclusory allegations, no personal knowledge, speculation, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals

4

to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1), conflicts with Plaintiff's deposition testimony that he and Quirke discussed station performance and that Plaintiff and Quirke developed a mutually agreed upon October 17, 2000 Performance Agreement to address the performance issues at the BCB station.  (*Id*. at p. 182, l. 1 - p. 184, l. 10; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit 15).

**Paragraph 17**:  conclusory allegations, no personal knowledge, speculation, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1), conflicts with Plaintiff's deposition testimony that he and Quirke discussed station performance and that Plaintiff and Quirke developed a mutually agreed upon October 17, 2000 Performance Agreement to address the performance issues at the BCB station.  (*Id*. at p. 182, l. 1 - p. 184, l. 10; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit 15).

**Paragraph 18**:  conclusory allegations, no personal knowledge, speculation, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals

to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1), conflicts with Plaintiff's deposition testimony that he and Quirke discussed station performance and that Plaintiff and Quirke developed a mutually agreed upon October 17, 2000 Performance Agreement to address the performance issues at the BCB station.  (*Id*. at p. 182, l. 1 - p. 184, l. 10; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit 15).

**Paragraph 19**:  conclusory allegations, conflicts with Plaintiff's deposition testimony that he and Quirke discussed station performance and that Plaintiff and Quirke developed a mutually agreed upon October 17, 2000 Performance Agreement to address the performance issues at the BCB station.  (*Id*. at p. 182, l. 1 - p. 184, l. 10; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit 15), conflicts with Plaintiff's deposition testimony that Quirke told Plaintiff he expected Plaintiff to meet service commitments and have his Managers conduct the agreed-upon Talk, Listen Action ("TLA") sessions and that Plaintiff simply disagreed with Quirke and disregarded Quirke's directive.  (Ex. 1: Plaintiff's dep., p. 186, ll. 6-21).

**Paragraph 20**:  conclusory allegations, no personal knowledge, hearsay, speculation, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages and making sure that his Manager's

appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1), conflicts with Plaintiff's deposition testimony that he and Quirke discussed station performance and that Plaintiff and Quirke developed a mutually agreed upon October 17, 2000 Performance Agreement to address the performance issues at the BCB station.  (*Id*. at p. 182, l. 1 - p. 184, l. 10; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit 15), conflicts with Plaintiff's deposition testimony that Quirke told Plaintiff he expected Plaintiff to meet service commitments and have his Managers conduct the agreed-upon Talk, Listen Action ("TLA") sessions and that Plaintiff simply disagreed with Quirke and disregarded Quirke's directive.  (Ex. 1:  Plaintiff's dep., p. 186, ll. 6-21).

**Paragraph 21**:  conclusory allegations, no personal knowledge, speculation, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving on time delivery of packages and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1).

**Paragraph 22**:  conclusory allegations, no personal knowledge, hearsay, speculation.

**Paragraph 23**:  conclusory allegations, no personal knowledge, hearsay.

**Paragraph 24**:  conclusory allegation, no personal knowledge, conflicts with Plaintiff's deposition testimony that Plaintiff, as the Senior Manager, bore responsibility for revising his FOP goals to account for historical station performance, including productivity, that Plaintiff was responsible for meeting the FOP goals that he had revised, as well as for controlling overtime hours, employee retention, improving

on time delivery of packages and making sure that his Manager's appropriately scheduled Courier routes, among other responsibilities.  P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1).

**Paragraph 25**:  conclusory allegations, no personal knowledge, hearsay, conflicts with Plaintiff's deposition testimony that he and Quirke discussed station performance and that Plaintiff and Quirke developed a mutually agreed upon October 17, 2000 Performance Agreement to address the performance issues at the BCB station.  (*Id*. at p. 182, l. 1 - p. 184, l. 10; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit 15).

**Paragraph 26**:  conclusory allegations, conflicts with Plaintiff's deposition testimony that he and Quirke discussed station performance and that Plaintiff and Quirke developed a mutually agreed upon October 17, 2000 Performance Agreement to address the performance issues at the BCB station.  (*Id*. at p. 182, l. 1 - p. 184, l. 10; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit 15).

**Paragraph 27**:  conclusory allegations, no personal knowledge, conjecture, rumor, speculation, inappropriate opinion testimony.

**Paragraph 28**:  conclusory allegations, no personal knowledge, speculation.  Plaintiff admitted in his deposition that he has not seen Barnes', or other Senior Managers', personnel files, discipline, or Performance Evaluations, nor did Quirke talk about performance issues of other Senior Managers with Plaintiff.  (P. dep., p. 223, ll. 6-18, p. 225, ll. 5-13, attached to MSJ Memo as Exhibit 1).

**Paragraph 29**:  conclusory allegations, no personal knowledge, hearsay.

**Paragraph 30**:  conclusory allegations, no personal knowledge.

**Paragraph 31**:  conclusory allegation, no personal knowledge, speculation.  Plaintiff admitted in his deposition that he has not seen Barnes', or other Senior Managers', personnel files, discipline, or

Performance Evaluations, nor did Quirke talk about performance issues of other Senior Managers with Plaintiff.  (P. dep., p. 223, ll. 6-18, p. 225, ll. 5-13, p. 226, ll. 15-21, p. 227, ll. 1-11, attached to MSJ Memo as Exhibit 1).

**Paragraph 32**:  conclusory allegation, no personal knowledge, speculation.  Plaintiff admitted in his deposition that he has not seen Barnes', or other Senior Managers', personnel files, discipline, or Performance Evaluations, nor did Quirke talk about performance issues of other Senior Managers with Plaintiff.  (P. dep., p. 223, ll. 6-18, p. 225, ll. 5-13, p. 226, ll. 15-21, p. 227, ll. 1-11, attached to MSJ Memo as Exhibit 1).

**Paragraph 33**:  conclusory allegations, no personal knowledge, hearsay, speculation. Plaintiff admitted in his deposition that he has not seen Barnes', or other Senior Managers', personnel files, discipline, or Performance Evaluations, nor did Quirke talk about performance issues of other Senior Managers with Plaintiff.  (P. dep., p. 223, ll. 6-18, p. 225, ll. 5-13, p. 226, ll. 15-21, p. 227, ll. 1-11, attached to MSJ Memo as Exhibit 1).

**Paragraph 34**:  conclusory allegations, no personal knowledge, speculation. Plaintiff admitted in his deposition that he has not seen Barnes', or other Senior Managers', personnel files, discipline, or Performance Evaluations, nor did Quirke talk about performance issues of other Senior Managers with Plaintiff.  (P. dep., p. 223, ll. 6-18, p. 225, ll. 5-13, p. 226, ll. 15-21, p. 227, ll. 1-11, attached to MSJ Memo as Exhibit 1).

**Paragraph 35**:  conclusory allegations, rumor, "general consensus", conjecture, hearsay, no personal knowledge.

**Paragraph 36**:  conclusory allegations, rumor, "general consensus", conjecture, hearsay, no personal knowledge.  Admittedly, Plaintiff's only knowledge of Richesin's alleged comments came from what

Clifton Dalton allegedly told Plaintiff.  (P. dep., p. 269, ll. 10-16, attached to MSJ Memo as Exhibit 1).

Plaintiff did not assist in the investigation regarding Richesin and was not informed of the results of the

investigation because he was a purported witness.  (Ex. 1:  P. dep., p. 276, ll. 6-21; p. 277, ll. 1-15).

**Paragraph 37**:  conclusory allegations, hearsay.

**Paragraph 38**:  conclusory allegations, no personal knowledge, hearsay, speculation.

**Paragraph 39**:  conclusory allegations, no personal knowledge.

**Paragraph 40**:  conclusory allegations, no personal knowledge.  Plaintiff was not at work on the day of

Pendleton's altercation with Noelle Olson, and Plaintiff did not participate in the investigation into the

Pendleton incident.  (Ex. 1:  P. dep., p. 247, ll. 17-21, p. 248, l. 1; p. 160, ll. 18-21, p. 161, ll. 1-3).

**Paragraph 41**:  conclusory allegations, no personal knowledge, hearsay. Plaintiff was not at work on

the day of Pendleton's altercation with Noelle Olson, and Plaintiff did not participate in the investigation

into the Pendleton incident.  (Ex. 1:  P. dep., p. 247, ll. 17-21, p. 248, l. 1; p. 160, ll. 18-21, p. 161, ll. 1-

3).

**Paragraph 42**:  conclusory allegations, no personal knowledge, hearsay, speculation. Plaintiff was not

at work on the day of Pendleton's altercation with Noelle Olson, and Plaintiff did not participate in the

investigation into the Pendleton incident.  (Ex. 1:  P. dep., p. 247, ll. 17-21, p. 248, l. 1; p. 160, ll. 18-21,

p. 161, ll. 1-3).

**Paragraph 43**:  conclusory allegations, no personal knowledge, conflicts with Plaintiff's deposition

testimony that Schmidt supported issuance of a Warning Letter.  (Ex. 1:  P. dep., p. 265, ll. 17-20).

Admittedly, Plaintiff's only knowledge of Richesin's alleged comments came from what Clifton Dalton

allegedly told Plaintiff.  (P. dep., p. 269, ll. 10-16, attached to MSJ Memo as Exhibit 1).  Plaintiff did not

assist in the investigation regarding Richesin and was not informed of the results of the investigation because he was a purported witness.  (Ex. 1:  P. dep., p. 276, ll. 6-21; p. 277, ll. 1-15).

**Paragraph 44**:  conclusory allegations, no personal knowledge, hearsay, conflicts with Plaintiff's deposition testimony that Schmidt supported issuance of a Warning Letter.  (Ex. 1:  P. dep., p. 265, ll. 17-20).  Admittedly, Plaintiff's only knowledge of Richesin's alleged comments came from what Clifton Dalton allegedly told Plaintiff.  (P. dep., p. 269, ll. 10-16, attached to MSJ Memo as Exhibit 1).  Plaintiff did not assist in the investigation regarding Richesin and was not informed of the results of the investigation because he was a purported witness.  (Ex. 1:  P. dep., p. 276, ll. 6-21; p. 277, ll. 1-15).

**Paragraph 45**:  conclusory allegations, hearsay, conflicts with Plaintiff's deposition testimony that Schmidt supported issuance of a Warning Letter.  (Ex. 1:  P. dep., p. 265, ll. 17-20).  Admittedly, Plaintiff's only knowledge of Richesin's alleged comments came from what Clifton Dalton allegedly told Plaintiff.  (P. dep., p. 269, ll. 10-16, attached to MSJ Memo as Exhibit 1).  Plaintiff did not assist in the investigation regarding Richesin and was not informed of the results of the investigation because he was a purported witness.  (Ex. 1:  P. dep., p. 276, ll. 6-21; p. 277, ll. 1-15).

**Paragraph 46**:  conclusory allegations, no personal knowledge, hearsay, rumor, conjecture, conflicts with Plaintiff's deposition testimony that Schmidt supported issuance of a Warning Letter.  (Ex. 1:  P. dep., p. 265, ll. 17-20).  Admittedly, Plaintiff's only knowledge of Richesin's alleged comments came from what Clifton Dalton allegedly told Plaintiff.  (P. dep., p. 269, ll. 10-16, attached to MSJ Memo as Exhibit 1).  Plaintiff did not assist in the investigation regarding Richesin and was not informed of the results of the investigation because he was a purported witness.  (Ex. 1:  P. dep., p. 276, ll. 6-21; p. 277, ll. 1-15).

**Paragraph 47**:  conclusory allegations, no personal knowledge, hearsay, rumor, conjecture, conflicts with Plaintiff's deposition testimony that Schmidt supported issuance of a Warning Letter.  (Ex. 1:  P. dep., p. 265, ll. 17-20).  Admittedly, Plaintiff's only knowledge of Richesin's alleged comments came from what Clifton Dalton allegedly told Plaintiff.  (P. dep., p. 269, ll. 10-16, attached to MSJ Memo as Exhibit 1).  Plaintiff did not assist in the investigation regarding Richesin and was not informed of the results of the investigation because he was a purported witness.  (Ex. 1:  P. dep., p. 276, ll. 6-21; p. 277, ll. 1-15).  This Court should strike the remaining unsupported conclusory assertions contained in Plaintiff's Response brief as well.

## II.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST INDIVIDUAL DEFENDANT, PATRICK J. QUIRKE

Plaintiff does not dispute that his only claims in this lawsuit arise under Title VII of the Civil Rights Act of 1964.  (*See* Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (hereinafter "Response"), at pp. 5-6).  Citing no case law, Plaintiff argues that this Court should allow his claims against Quirke to continue because Plaintiff disagrees with the Fourth Circuit's determination that there is no individual liability under Title VII.  (*Id.*).  Fourth Circuit precedent compels dismissal of Plaintiff's claims against Quirke as a matter of law.[1]  *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998).

## III.    EXHAUSTION OF ADMINISTRATIVE PREREQUISITES

Relying on *EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976), Plaintiff claims that his racial harassment claim is reasonably related to the race discrimination and retaliation claims raised in

---

[1]    Indeed, as the *Lissau* court noted, every Circuit to address the issue since the legislature enacted 42 U.S.C. § 1981a has ruled that there is no individual liability under Title VII.  159 3d at 181.

his EEOC charge and, therefore, that he should be permitted to pursue his racial harassment claim in this

Court.  (Response, at pp. 8-9).  Plaintiff's reliance on *EEOC v. General Electric* is misplaced.

In *General Electric*, the court held that

> . . .the original charge is sufficient to support action by the EEOC as well
> as a civil suit under the Act for any discrimination stated in the charge
> itself or developed in the course of a reasonable investigation of that
> charge, *provided such discrimination was included in the reasonable
> cause determination of the EEOC and was followed by compliance with
> the conciliation procedures fixed in the Act.*

532 F.2d at 366 (emphasis added).  Here, unlike the *General Electric* case, Plaintiff has produced no

evidence that the EEOC's investigation of Plaintiff's charge uncovered any evidence of racial

harassment.  There is no evidence that the EEOC issued a determination letter containing any findings

whatsoever with respect to racial harassment, and Plaintiff has presented no evidence whatsoever that

conciliation took place with respect to any harassment allegations.  Accordingly, the *General Electric*

decision provides no basis for Plaintiff's assertion that he has exhausted his administrative remedies with

respect to his racial harassment claim.  In fact, the established law in the Fourth Circuit compels a

contrary result.

In *Jackson v. Board of Ed.*, No. 98-1060, 1999 U.S. App. LEXIS 4818, at *7 (4th Cir. Mar. 22,

1999) (copy attached), the plaintiff's charge alleged that the defendant subjected the plaintiff to race

discrimination by assigning her to work a split shift.  The *Jackson* plaintiff attempted to pursue a claim

of racial harassment in court.  *Id*.  The *Jackson* court held that the plaintiff's racial harassment claim was

barred because she did not include this allegation in her charge.  *Id.  See Marshall v. Home Depot*, No.

97-1516, 1998 U.S. App. LEXIS 26860, at *7 (4th Cir. Oct. 20, 1998) (affirming dismissal of racial

harassment claims because the plaintiff's charge alleged only race discrimination and, therefore, the

plaintiff's racial harassment claim exceeded the scope of his EEOC charge) (copy attached).  This Court

should follow the reasoning of the *Jackson* and *Marshall* courts, and dismiss Plaintiff's racial harassment claim.

## IV.    PLAINTIFF CANNOT ESTABLISH THE PRIMA FACIE ELEMENTS OF A RACE DISCRIMINATION CLAIM

Plaintiff's claims of race discrimination are based solely upon Plaintiff's own conclusory allegations that Quirke set unrealistic performance goals for Plaintiff in order to 'set him up for failure' and that Caucasian Senior Managers were treated more favorably than Plaintiff. (Response, at p. 12). Plaintiff's own deposition testimony belies Plaintiff's claims. Plaintiff admitted at his deposition that he was responsible for setting FOP goals, properly staffing the station, ensuring that his Managers appropriately structured routes, minimizing overtime hours, among other things, and that his station failed to meet these goals during Plaintiff's entire tenure as a Senior Manager over the BCB station. (P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, p. 182, l. 1 - p. 184, l. 10, attached to MSJ Memo as Exhibit 1 ; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit 15). There is no dispute that Plaintiff understood that he would receive discipline for failure to accomplish these responsibilities. (P. dep., p. 325, ll. 6-21, p. 327, ll. 8-11, attached to MSJ Memo as Exhibit 1). Plaintiff admitted at his deposition that he agreed to the goals that he and Quirke developed in Plaintiff's October 17, 2000 Performance Planner, and that he failed to meet these goals. (P. dep., p. 182, l. 1 - p. 184, l. 10, attached to MSJ Memo as Exhibit 1). Plaintiff admitted that he did not contest the reasonableness of these goals. (*Id*.). Plaintiff admitted that he has no evidence that race played any part in Quirke's disciplinary decisions and in the decision to terminate Plaintiff's employment. (P. dep., p. 223, ll. 6-18, p. 225, ll. 5-13, p. 226, ll. 15-21, p. 227, ll. 1-11, attached to MSJ Memo as Exhibit 1).

Similarly, Plaintiff's contention that Caucasian Senior Managers under Quirke were treated more favorably is unsupported by the evidence. Plaintiff admitted at his deposition that he had never seen

other Senior Managers' personnel files, Performance Evaluations, or discipline. (P. dep., p. 223, ll. 6-18, p. 225, ll. 5-13, p. 226, ll. 15-21, p. 227, ll. 1-11, attached to MSJ Memo as Exhibit 1). Plaintiff's conclusory allegations that others were treated more favorably, not based upon personal knowledge, are insufficient to survive summary judgment. *Greensboro*, 64 F.3d at 967.

In any event, Plaintiff has presented no evidence that Caucasian Senior Managers under Quirke's supervision, Clint Barnes and Charles Hergesheimer, were similarly situated with Plaintiff. (Defendants' Memorandum in Support of MSJ, at pp. 21-25, hereinafter "MSJ Memo"). Even if this Court were to compare Plaintiff's treatment with that of Barnes and Hergesheimer, the evidence demonstrates that Quirke treated Plaintiff as well as, if not better than, the two Caucasian Senior Managers that reported to Quirke.

For instance, Quirke downgraded Barnes on his Performance Evaluation in two categories, required Barnes to submit two Performance Agreements, and issued Barnes a Performance Reminder[2], though Barnes' station needed improvement in only two areas, safety and productivity.[3] (MSJ Memo, at

---

[2]     Plaintiff makes much of the fact that Barnes received a Performance Reminder for failure to meet all goals set in his Performance Agreement, while Plaintiff initially received a Warning Letter. (Response, at p. 14). The two circumstances are not similar. Barnes did not falsely represent to Quirke that he was following his Performance Planner when, in truth, he was not, as Plaintiff did. (Quirke Decl., ¶¶ 21-25, 37, attached to MSJ Memo as Exhibit 3; Barnes Decl., ¶ 6, attached to MSJ Memo as Exhibit 24). In any event, John Formisano gave Plaintiff the benefit of the doubt and changed the discipline to a Performance Reminder. (Quirke Decl., ¶ 25, attached to MSJ Memo as Exhibit 3). As a practical matter, the distinction between a Warning Letter and Performance Reminder is a distinction without a difference in this case. There is no dispute that accumulation of three disciplinary letters of any kind leads to termination, as does failure to submit an acceptable Performance Planner.

[3]     Plaintiff's assertion that Quirke gave Barnes a higher overall Performance Evaluation score for the same performance deficiencies that Plaintiff exhibited is, quite simply, false. Plaintiff's conclusory assertions are not based upon personal knowledge. (P. dep., p. 223, ll. 6-18, p. 225, ll. 5-13, p. 226, ll. 15-21, p. 227, ll. 1-11, attached to MSJ Memo as Exhibit 1). The uncontested facts demonstrate that Plaintiff's performance was poor in numerous areas, while Barnes had only two areas of performance that needed to be addressed. (Quirke Decl., ¶¶ 8, 11 and Attachment A thereto, attached to MSJ Memo as Exhibit 3).

pp. 21-23).  Quirke offered Barnes a demotion to a Manager position in a different state at a three grade

level reduction in salary, though Barnes' station needed improvement in only two areas.  (Quirke Decl.,

¶¶ 1, 35, attached to MSJ Memo as Exhibit 3; Barnes Decl., ¶¶ 3, 8, attached to MSJ Memo as Exhibit

24).

 Plaintiff's only support for his claim that Barnes was treated more favorably is his conclusory

allegation that Quirke testified at his deposition that he had no intention of issuing discipline to Barnes

that was similar to discipline issued to Plaintiff.  (Response, at p. 14).  Plaintiff has failed to attach the

cited deposition pages and, therefore, Plaintiff's unsupported assertion should be stricken.  *See* Fed. R.

Civ. P. 56(e).  Even if this Court were to consider Plaintiff's claim on the merits, the evidence

demonstrates that Quirke did, in fact, apply discipline even-handedly.  As noted above, Barnes'

performance deficiencies were not nearly as severe as Plaintiff's.  Further, as of the date of Barnes'

request for a downbid, Barnes had just recently received a Performance Reminder.  (Quirke Decl., ¶ 39,

attached to MSJ Memo as Exhibit 3).  Unlike Plaintiff, Barnes had not reached the stage in the

Performance Improvement Process where termination or additional discipline was warranted.  (*Id*. at ¶

14 and Attachment C thereto).  Had Barnes continued in the Senior Manager position at DCA and had

Barnes continued to have performance issues, Quirke intended to continue the Performance

Improvement process with Barnes, including additional discipline as necessary.  (*Id*. at ¶ 39).  Barnes

decision to demote obviated the need for continued Performance Improvement.  (*Id*.).  Plaintiff and

Barnes simply were not similarly situated.

 Not surprisingly, Plaintiff has dropped his claim that Quirke treated Charles Hergesheimer and

Pat Lewis differently.  Quirke's treatment of Hergesheimer provides further evidence that Quirke treated

Plaintiff at least as well as, if not better than, Caucasian Senior Managers reporting to Quirke.  (MSJ Memo, at pp. 23-24).

Plaintiff cannot refute the fact that Quirke gave Plaintiff every opportunity to continue his employment with FedEx, nor does Plaintiff provide any response to the record evidence demonstrating the numerous specific steps Quirke took to help Plaintiff achieve his FOP and budget goals, and the numerous additional chances that Quirke gave Plaintiff to correct his performance.  (Quirke Decl., ¶¶ 7, 12, 13, 15, 17, 20, 24, 27, 30, attached to MSJ Memo as Exhibit 3).  Quirke offered Plaintiff an opportunity to step down to a Grade level 27 Senior Manager position over BOF, *a station for which Plaintiff admittedly already had responsibility*, prior to initiating the Performance Improvement process.  (*Id*. at ¶ 14; Ex. 1:  P. dep., p. 379, ll. 1-16).  Plaintiff has presented no evidence of race discrimination and, therefore, his claim should be dismissed.

## V.    PLAINTIFF CANNOT ESTABLISH THE PRIMA FACIE ELEMENTS OF A RETALIATION CLAIM

### A.    No Protected Activity

Plaintiff's only support for his claims of retaliation are his Declaration testimony and citations to his Complaint.  (Response, at pp. 18-20).  As explained in Section I above, Plaintiff's Declaration testimony should be stricken.  Further, Plaintiff's reliance upon allegations contained in his Complaint is insufficient to create material issues of fact.  As the Supreme Court explained in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the plaintiff must go beyond the pleadings and introduce specific facts on each element of his claim showing that there is a genuine issue of material

fact to avoid summary judgment.[4]  Plaintiff has failed to meet this burden, and his claim should be dismissed.

Even if this Court were to consider the "evidence" upon which Plaintiff relies, summary judgment remains appropriate.  Plaintiff claims that he participated in protected activity when he allegedly disagreed with Quirke's decision to issue Pendleton a Warning Letter, and to issue no discipline to Clifton Dalton.  (Response, at p. 17).  Plaintiff asserts that Pendleton and Dalton were treated differently for the same behavior, although Plaintiff admittedly had no personal knowledge of what transpired. (Ex. 1:  P. dep., p. 247, ll. 17-21, p. 248, l. 1; p. 160, ll. 18-21, p. 161, ll. 1-3).  Plaintiff's allegations with respect to what Burvis allegedly told him are hearsay and should be stricken, as pointed out in Section I above.  Plaintiff simply has no personal knowledge upon which to base his conclusory assertion that Pendleton and Dalton were treated differently for similar conduct.

In any event, it is undisputed that Plaintiff never told Quirke that he believed the purported disparity in discipline had anything to do with race.  (P. dep., p. 256, ll. 18-21, p. 257, ll. 1-2, attached to MSJ Memo as Exhibit 1).  It is undisputed that it was part of Plaintiff's job to discuss with Quirke discipline to be administered to a Manager under Plaintiff's supervision.  (*Id*. at p. 23, ll. 16-21, p. 24, ll. 1-21, p. 25, ll. 1-15, p. 365, ll. 10-18).  Accordingly, Plaintiff cannot establish that he engaged in protected activity, and cannot establish that he had an objectively good faith belief that the above-described incident constituted an unlawful employment practice.  *Clark County School District v. Breeden*, 532 U.S. 268, 271, *reh'g denied*, 533 U.S. 912 (2001); *McKenzie v. Renberg's, Inc*., 94 F.3d

---

[4]    Plaintiff mistakenly relies upon the Fed. R. Civ. P. 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41 (1957) and *Colbern v. Upper Darby*, 838 F.2d 663 (3d Cir. 1988).  (Response, at p. 5).

1478, 1486 (10th Cir. 1996), *cert. denied*, 520 U.S. 1186 (1997); *Adams v. Giant Foods, Inc.*, 225 F.

Supp. 2d 600, 605 (D. Md. 2002).

Plaintiff's only other claim of protected activity is that he reported to Quirke that a subordinate

Caucasian employee, Bobby Richeson, called Plaintiff a "nigger" and a "faggot." (Response, at p. 18).

Plaintiff asserts that Quirke retaliated against Plaintiff by failing to subject Richesin to "any substantive

disciplinary or corrective action."[5] (*Id*. at p. 18, 20). As with Plaintiff's claims regarding the Pendleton

incident, Plaintiff has no personal knowledge to support his claims. Admittedly, Richesin never referred

to Plaintiff in a racially derogatory manner in Plaintiff's presence. (P. dep., p. 269, ll. 10-16, attached to

MSJ Memo as Exhibit 1) Admittedly, Plaintiff was not privy to the results of the investigation that

Quirke and Burvis conducted. (Ex. 1: P. dep., p. 276, ll. 6-21; p. 277, ll. 1-15).

Additionally, there is no dispute that FedEx policy required that Richesin be suspended, and that

Quirke investigate the allegations against Richesin prior to issuance of any discipline. (Quirke Decl., ¶

52 and Attachment D thereto, attached to MSJ Memo as Exhibit 3; Burvis Decl., ¶¶ 4-5, attached to MSJ

Memo as Exhibit 13). It is undisputed that Quirke and Burvis conducted an investigation, that the

investigation did not substantiate the claims that Plaintiff made. (Quirke Decl., ¶ 52, attached to MSJ

Memo as Exhibit 3; Burvis Decl., ¶¶ 4-5, attached to MSJ Memo as Exhibit 13). It is undisputed that

Richesin received a Warning Letter based upon the investigation that Quirke and Burvis conducted, and

that Richesin never returned to work at FedEx after the investigation. (Quirke Decl., ¶ 52, attached to

MSJ Memo as Exhibit 3; Burvis Decl., ¶¶ 4-5, attached to MSJ Memo as Exhibit 13). Plaintiff's

allegations with respect to the sufficiency of Quirke's response to the Richesin incident and Quirke's

---

[5]        Interestingly, Plaintiff claims that Quirke's issuance of a Warning Letter to Richesin was
a failure to issue any substantive discipline, while Plaintiff characterizes the Warning Letter issued to

purported unwillingness to discipline Richesin are unsupported by the facts. Accordingly, Plaintiff had

no good faith basis for believing that Richesin's alleged single comment to Dalton about Plaintiff was an

unlawful act, or that Quirke's decision to follow FedEx policy in determining the appropriate discipline

for Richesin constituted unlawful conduct. *Little v. United Techs.*, 103 F.3d 956, 959 (11th Cir. 1997);

*Fitch v. Solipsys*, 94 F. Supp. 2d 670, 677-78 (D. Md. 2000).

Likewise, Plaintiff concedes that it was his job to report Richesin's alleged behavior to Quirke,

and to discuss proposed discipline of subordinate employees with Quirke. (Response, at p. 18).

Accordingly, Plaintiff cannot establish that he engaged in protected conduct. *Breeden*, 532 U.S. at 271.

### B.    No Causal Connection

Plaintiff's claim that a causal connection exists between his alleged protected activity and any

adverse action is supported only by conclusory allegations.[6] (Response, at pp. 23-26). As set forth in

Section I above, conclusory allegations are insufficient to overcome summary judgment.

In addition to the evidentiary infirmities, Plaintiff simply ignores the fact that FedEx initiated the

performance improvement process well before Plaintiff's first purported protected activity. (MSJ

Memo, at p. 31). Plaintiff's only response is that the emails that initiated his discipline were complaints

directed at others, not Plaintiff. (Response, pp. 25-26). It is undisputed that Quirke believed the emails

that initiated Plaintiff's discipline raised complaints regarding issues within Plaintiff's control. (Quirke

Decl., ¶ 9, attached to MSJ Memo as Exhibit 3). It is undisputed that the BCB employees who attended

---

Pendleton as "one of the most severe forms of discipline a FedEx employee can receive and can
seriously affect [sic] one career with Federal Express." (Response, at p. 21).

[6]      Plaintiff incorrectly asserts that the mixed motive analysis set forth in *Mt. Healthy v.
Doyle*, 429 U.S. 274 (1977) provides the appropriate standard for determining causation. The *Mt.
Healthy* analysis applies only when the plaintiff demonstrates that protected activity motivated an
adverse action. *Id.* If the plaintiff makes this showing, the defendant may avoid liability by
demonstrating that it would have taken the adverse action anyway. *Id.*

the meeting that Quirke and Burvis held to follow up on the concerns raised in the emails believed that the problems rested squarely with Plaintiff. (*Id*. at ¶ 11; Burvis Decl., ¶¶ 2-3, attached to MSJ Memo as Exhibit 13). Plaintiff cannot demonstrate that his alleged protected activity preceded the decision to discipline Plaintiff and, therefore, Plaintiff cannot establish causation. *Breeden*, 532 U.S. at 272.

Further, Plaintiff cannot overcome his own admission that he has no evidence of retaliation. (MSJ Memo, at pp. 30-31). Plaintiff likewise cannot overcome the fact that the passage of four months or more between the alleged protected activity and Plaintiff's disciplinary letters, Performance Evaluation, and termination destroys any inference of causation. (MSJ Memo, at p. 30 & n.6).

## VI.    PLAINTIFF CANNOT ESTABLISH PRETEXT

The record does not support Plaintiff's claim that FedEx's reasons for its decisions to discipline and, ultimately, terminate Plaintiff's employment are pretextual. Plaintiff's claim of pretext is based upon allegations with no citation to the record. (Response, at pp. 27-35). Likewise, Plaintiff relies upon purported citations to Quirke's deposition testimony, while failing to submit the deposition transcript as an Exhibit.

Even if this Court were to consider Plaintiff's unsupported allegations, Plaintiff cannot establish pretext. Quirke's purported testimony that the BCB station was a larger station than DCA, the station assigned to Barnes, establishes nothing, except perhaps that Barnes and Plaintiff were not similarly situated. As explained in Section IV above, Plaintiff's claim that Quirke disciplined Plaintiff more harshly than Barnes for similar problems is unfounded.

Likewise, Plaintiff's assertion that he had no control over station manning, Courier route structuring, and training is belied by Plaintiff's own deposition testimony. (P. dep., p. 53, ll. 7-21; 54, ll. 1-19; p. 85, ll. 8-21; p. 86, ll. 1-21; p. 87, ll. 1-21, attached to MSJ Memo as Exhibit 1). Plaintiff's claim

that external factors beyond his control (namely late freight) prevented him from achieving FOP goals is also in conflict with his deposition testimony. (*Id.*). In any event, Plaintiff conceded at his deposition that all of the Senior Managers faced the same external factors. (Ex. 1: P. dep., p. 191, ll. 6-20). Despite these alleged "external factors," Quirke held all of his Senior Managers accountable for achieving FOP goals. (MSJ Memo, at pp. 21-25). Accordingly, Plaintiff cannot demonstrate that he was treated differently from other Senior Managers under Quirke's supervision.

As explained in Section IV above, Plaintiff's reliance upon Quirke's purported testimony for the proposition that Quirke admittedly did not intend to discipline Barnes in a manner similar to Quirke's discipline of Plaintiff for allegedly similar failures is misplaced. (Response, at pp. 33-35). Plaintiff makes much of the fact that Quirke issued him a Performance Evaluation in February 2001, though Plaintiff's next most previous Evaluation was given in May 2000. (Response, at p. 24). Quirke gave all of the following Senior Managers a Performance Evaluation in February 2001, though their next most previous Evaluations were given in March and May of 2000: Barnes, Cheryl Stone, Joyce Perry, and Naomi Powell. (Quirke Decl., ¶¶ 3-4, attached hereto as Exhibit 2).

Plaintiff has failed to demonstrate that Quirke treated him less favorably than similarly situated Caucasian Senior Managers. Indeed, Plaintiff has failed to produce any evidence of pretext and, therefore, this Court should dismiss Plaintiff's race discrimination and retaliation claims.

## VII.    PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RACIAL HARASSMENT

Even if this Court were to find that Plaintiff exhausted his administrative remedies with respect to his racial harassment claim (which it should not), Plaintiff cannot establish the essential elements of his claim. Plaintiff claims that Quirke created a racially hostile work environment when he instructed Plaintiff to issue Rva Pendleton a Warning Letter for her inappropriate conduct with a subordinate,

instead of the documented counseling that Plaintiff wanted to issue to her.  (Response, at p. 10).

Plaintiff also claims that Quirke harassed him when Quirke did not support termination of subordinate

employee Bobby [sic] Richardson.  (*Id*.).  In making these assertions, Plaintiff relies exclusively upon

the allegations contained in his Complaint.[7]  (*Id*.)  Plaintiff cannot establish a material issue of fact with

citations to his Complaint.  *Matsushita*, 475 U.S. at 587.

In any event, disagreement between Quirke and Plaintiff as to the level of discipline to be issued

to Pendleton and Richesin does not establish racial harassment, nor would a reasonable person view

such work-related discussions as harassment.  *See Faragher v. Boca Raton*, 524 U.S. 775, 778 (1998)

(stating that the standard for assessing whether there is a hostile work environment is designed to filter

out complaints regarding ordinary workplace tribulations).  This is especially true given that Plaintiff

had no personal knowledge of the facts that Quirke and Personnel Representative Gay Burvis learned

during their investigations of the Pendleton and Richesin issues, and no personal knowledge of

Pendleton's and Richesin's alleged conduct. (P. dep., p. 269, ll. 10-16, attached to MSJ Memo as Exhibit

1; Ex. 1:  P. dep., p. 276, ll. 6-21; p. 277, ll. 1-15; ., p. 247, ll. 17-21, p. 248, l. 1; p. 160, ll. 18-21, p.

161, ll. 1-3).  Likewise, the level of discipline issued to Richesin had no impact on Plaintiff's ability to

manage employees at BCB, given that Richesin never came back to work at FedEx and given that

discipline issued to employees is confidential. (Quirke Decl., ¶ 52, attached to MSJ Memo as Exhibit 3;

Burvis Decl., ¶¶ 4-5, attached to MSJ Memo as Exhibit 13).

Plaintiff further claims that Quirke harassed him by disciplining him for productivity issues that

were allegedly beyond his control, relying upon his Declaration.  (Response, at p. 11-12).  As explained

---

[7]    Plaintiff also relies upon a lengthy quotation, allegedly from Quirke's deposition.  (Response, at
pp. 36-39).  Plaintiff has failed to submit Quirke's deposition transcript pages.  Accordingly, this

in Section I above, Plaintiff's Declaration testimony should be stricken.  As explained in Sections IV and

VI above, Plaintiff admittedly set the revised FOP productivity goals for the BCB station, then failed to

meet the very goals that he himself set.  Plaintiff admittedly signed the Performance Planner that he and

Quirke developed in October 2000, agreeing to follow the Planner to improve his performance. (*Id*. at p.

182, l. 1 - p. 184, l. 10; October 17, 2000 Performance Agreement, attached to MSJ Memo as Exhibit

15).  Plaintiff admittedly had no objections to the performance goals set out in the Planner.  (*Id*.).

Plaintiff admittedly did not follow the Performance Planner.  (P. dep., p. 189, ll. 3-12; p. 194, ll. 11-21;

p. 195, ll. 13-15; p. 196, ll. 14-20; p. 199, ll. 3-7, 13-21; p. 200, ll. 1-3; p. 201, ll. 9-21; p. 202, ll. 1-16;

p. 209, ll. 13-17, attached to MSJ Memo as Exhibit 1).  Plaintiff's attempt to obscure the issues by

blaming his failures on Quirke contradicts his own deposition testimony.  Plaintiff has failed to come

forward with competent evidence in support of his racial harassment claim and, therefore, the claim

should be dismissed.

## VIII.  PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES SHOULD BE DISMISSED

Plaintiff's sole basis for claiming that punitive damages are appropriate here is that Quirke

allegedly disciplined Plaintiff more harshly than Barnes.  (Response, at p. 41).  As explained above,

Plaintiff and Barnes were not similarly situated, nor can Plaintiff demonstrate that he was disciplined

more harshly than Barnes under substantially similar circumstances.  There is no evidence on this record

that any actions of FedEx or Quirke violated Title VII, much less that Defendants acted maliciously or

with reckless indifference to Plaintiff's rights.

Likewise, Plaintiff has come forward with no evidence, save for his own conclusory allegations,

that Quirke served in a managerial capacity, as defined in *Kolstad v. ADA*, 527 U.S. 526 (1999).

---

"testimony" is not part of the record and should not be considered in ruling on Defendants' motion for

Plaintiff has come forward with no evidence that Quirke committed any unlawful acts within the scope of his employment, or for the purpose of serving FedEx's interests.  Plaintiff has submitted no evidence that FedEx does not make a good faith effort to implement its policies prohibiting unlawful conduct. Accordingly, this Court should strike Plaintiff's punitive damages claim.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's claims in their entirety.

Respectfully submitted,

By: _____/s/_____
Mary Jane Palmer
Federal Express Corporation
3620 Hacks Cross Road
Building B, Third Floor
Memphis, Tennessee 38125
Phone: (901) 434-8555
Facsimile: (901) 434-9271

summary judgment.

Eric Hemmendinger
SHAWE & ROSENTHAL, LLP
11th Floor, Sun Life Building
20 South Charles Street
Baltimore, MD 21201
(410) 752-1040
(410) 752-8861 (fax)

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was electronically filed in this case on the 21st day of April 2003.  In the event that counsel for Plaintiff is not registered with the Court, a paper copy will be served upon Brian K. McDaniel, and Kevin L. Chapple, 1211 Connecticut Avenue, NW, Suite 303, Washington, DC 20036, via U.S. Mail, postage prepaid on the 21st day of April, 2003.

_____/s/_____

475933