LEXSEE 2000 us app lexis 1012

**TIMOTHY L. MACK, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.**

No. 99-2315, No. 97 C 1207

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

*2000 U.S. App. LEXIS 1012*

January 20, 2000, Submitted *

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2).

January 21, 2000, Decided

**NOTICE:**
[*1] UNPUBLISHED ORDER. Not to be cited per Circuit Rule 53.

**SUBSEQUENT HISTORY:**
Reported in Table Case Format at: *2000 U.S. App. LEXIS 13736.* Rehearing Denied March 14, 2000, Reported at: *2000 U.S. App. LEXIS 3967.* Certiorari Denied October 2, 2000, Reported at: *2000 U.S. LEXIS 5958.*

**PRIOR HISTORY:**
Appeal from the United States District Court for the Central District of Illinois.

**DISPOSITION:**
Judgment of district court AFFIRMED.

**COUNSEL:**
For TIMOTHY L. MACK, Plaintiff - Appellant: Timothy L. Mack, Bloomington, IL.

For STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant - Appellee: J. Reed Roesler, DAVIS & CAMPBELL, Peoria, IL.

**JUDGES:**
Michael M. Mihm, Judge. Before Hon. HARLINGTON WOOD, JR., Circuit Judge, Hon. JOEL M. FLAUM, Circuit Judge, Hon. TERENCE T. EVANS, Circuit Judge.

**OPINIONBY:**
Michael M. Mihm

**OPINION:**

### ORDER

Fifty-one year old Timothy Mack has suffered from Obsessive-Compulsive Disorder (OCD) since the fifth grade. The Equal Employment Opportunity Commission (EEOC) recognizes OCD as a psychiatric disability under the Americans with Disabilities Act (ADA), *42 U.S.C. § 12111.* Mack sued his employer, State Farm Mutual Automobile Insurance Company, under the ADA and the Age Discrimination in Employment Act (ADEA), *29 U.S.C. § § 621*-624, claiming that State Farm twice failed to promote and eventually terminated him on the basis of his OCD and age. The district court granted summary [*2] judgment to State Farm, concluding that one of Mack's failure-to-promote claims was untimely, and that no genuine issue of material fact for trial existed for trial on his remaining claims. Now pro se, Mack appeals, arguing that his time-barred claim was part of a continuing violation of his civil rights, and that he presented sufficient evidence to survive summary judgment on his other claims. We affirm.

Mack joined State Farm as an Art and Design Supervisor in its Audio Visual (AV) Department in 1977.

State Farm employees receive annual performance reviews, and favorable reviews--"expected," "exceptional," or "performance exceeds expected"--result in annual salary increases, whereas unfavorable reviews do not. Mack received an "expected" rating at his first performance review. In 1979, however, he was caught smoking marijuana while on business in a company-owned car, and as a result received a "below expected" review and no raise for the following year. Over the next decade, however, Mack's supervisors generally rated him "expected," but he was not promoted despite his requests in 1986 and 1990.

Mack first realized that he had OCD in 1988 or 1989. Between 1989 and 1992, Mack's [*3] supervisors rated him "performance exceeds expected," "expected," and "exceptional," respectively. He was not satisfied with his 1993 "exceptional" review, however, and he started writing letters to State Farm executives expressing his frustration over his lack of advancement and objecting to company policies. In a 1994 letter to President Ed Rust, Mack explained that he was attempting to put his career "back on track" following the marijuana incident 15 years earlier. Mack's supervisor rated him "expected" in 1994, and a psychiatrist formally diagnosed him with OCD in April 1995. Mack began therapy, but quit after 10 weeks.

In July 1995, Mack requested promotion to Superintendent of Art and Design. His supervisor rejected his request, however, and promoted Mike Pertinac to the position. Instead of a promotion, Mack received a lateral transfer to the Public Affairs Department, which he considered a "good move," but he nevertheless immediately consulted an attorney regarding possible legal action. The following spring Mack informed his supervisor, Barry Lowe, that he was taking medication for OCD, stating that he did not want Lowe to "fire him for drugs" if he ever observed Mack taking [*4] medication at work. Mack also discussed his career with Lowe, and explained that he desperately needed a promotion to satisfy his compulsion to be recognized for his achievements. Lowe, who would leave Public Affairs in 1996, did not act on Mack's request. Mack then sought the position vacated by Lowe, but Mike Livingston n1 refused to promote him on four grounds: (1) he "[saw] things through sunglasses, not as they truly [were]"; (2) he "carried around a lot of excess baggage"; (3) he "failed to let go of the past"; (4) he "inconsistently answered the same question at different times"; and (5) he had trouble getting along with another AV Department employee. Mack believed that the first four reasons were merely symptoms of his OCD, and asked Livingston if he was aware of his condition. Livingston replied only that he did not know what OCD was, and he and Mack did not further discuss OCD.

n1 The record does not specify what supervisory position Livingston held at State Farm.

Shortly thereafter, after consulting [*5] with Livingston, Director of Public Affairs John Rosenstock selected 38 year-old Ronald Reeves over Mack to replace Lowe. Rosenstock believed that Reeves was the best candidate for the job because Reeves had received better performance ratings than Mack, had broader experience with State Farms's business, including management, claims, agency, estimating, underwriting, disaster, and subrogation work, had specialized insurance training, and was actively involved in outside insurance organizations and community volunteer work. Reeves had also completed more company-sponsored education courses than Mack, who had no claims, agency, estimating, or underwriting experience, and was not involved in outside insurance or volunteer organizations. After learning that Reeves was promoted instead of himself, Mack immediately reported to State Farm's Medical Department, and the following day had what he described as a "panic attack." He took a short vacation and returned to work, but suffered a heart attack in August, requiring five days' hospitalization. Mack's cardiologist released him to return to work without restriction in September 1996, but a clinical psychiatrist postponed Mack's return date [*6] until October.

Several weeks after returning to work, Rosenstock met with Mack to review his performance, and criticized Mack's work up to and immediately following his heart attack. Mack informed him that he suffered from OCD, but Rosenstock stated that did not know what OCD was. Mack did not indicate that OCD limited his ability to work, and they did not further discuss OCD. Mack left the meeting angry, and rather than returning to work immediately checked into the Medical Department, which placed him on a leave of absence until July 1997. While on leave, Mack filed age and disability discrimination charges with the Equal Employment Opportunity Commission (EEOC), received a right-to-sue letter, and filed this lawsuit represented by counsel.

He returned to work in July 1997 as scheduled under a new supervisor, Rock Jenkins, who was also unaware of Mack's OCD. In December 1997, Jenkins met with Mack to review his performance following his return to work. Jenkins criticized Mack's work, and Mack left the review angry, proceeding straight to the Medical Department. Two days later he again met with Jenkins, and Jenkins criticized his conduct following the earlier performance review. [*7] Mack immediately returned to the Medical Department and was placed on medical

leave. Five months later he submitted a claim form asserting that he was completely disabled and unable to return to work because his job placed him "in a life-threatening position dealing with the extreme hostile work environment." State Farm's Medical Department never released Mack to return to work.

During a June 1998 deposition for this lawsuit, State Farm asked Mack what accommodation he needed to return to work. Mack replied that he wanted "a guarantee to be left alone," but could not explain who should leave him alone. Dr. Richard Ratner, a forensic psychiatrist retained by State Farm, examined Mack two weeks later and confirmed that Mack suffered from OCD. Dr. Ratner opined that although Mack's OCD did not limit his major life activity of working, Mack's paranoia and obsessive behavior "poisoned the well" of his employment at State Farm, rendering State Farm "uniquely a place where [Mack] will not be able to return to work." When Dr. Ratner asked Mack what he would do if he lost his case, Mack answered that he would look for another job. Dr. Timothy Roberts, Mack's physician, completed Mack's disability [*8] claim form in July 1998, stating that Mack's prognosis was "guarded to poor," and that he did not know when Mack could return to any type of employment. Dr. Roberts also completed a group long-term disability form for Mack, in which he stated that Mack was incapable of performing his occupation and that his present position could not be modified to "allow for handling with impairment." Citing Mack's failure to return to work prior to exhausting all of his leave benefits, State Farm fired him in October 1998.

After discovery, the district court granted summary judgment to State Farm, concluding that one of Mack's failure-to-promote claims was time-barred, Mack could not show that State Farm's legitimate, non-discriminatory reasons for failing to promote him and terminating him were pretextual, and Mack was not a qualified individual with a disability under the ADA. We review de novo a grant of summary judgment, considering the evidence and all inferences that might be drawn from it in the light most favorable to the non-moving party. *Green v. National Steel Corp., 197 F.3d 894, 897 (7th Cir. 1999).* In employment discrimination cases such as this, where motive and [*9] intent are at issue, this standard is applied with added rigor. *Roberts v. Separators, Inc., 172 F.3d 448, 450 (7th Cir. 1999).*

Mack initially complains that the district court failed to consider the evidence in the light most favorable to him, accepting only State Farm's version of events rather than his own, and ignoring additional salient facts in his response and accompanying memorandum to State Farm's summary judgment motion. But Mack failed to dispute or properly respond to State Farm's statement of uncontested facts submitted pursuant to Central District of Illinois Local Rule 7.1(D)(1). Consequently, he admitted as true the facts set forth in State Farm's Rule 7.1(D)(1) statement. *See Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1313 (7th Cir. 1995)* (applying similar local rule in the Northern District of Illinois). Mack's 17 objections to State Farm's 101 numbered paragraphs did not explain why he disputed or denied the truth of State Farm's submitted facts, nor did he cite to the record for support, as required by Rule 7.1(D). Any additional facts raised in Mack's memorandum opposing State Farm's summary judgment motion were not properly [*10] before the district court, and likewise are not considered by us. *See Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 2000 U.S. App. LEXIS 90, 2000 WL 10251, at *1 (7th Cir. 2000).*

Mack asks that we overlook his failure to properly object to State Farm's facts and consider his additional facts because he is proceeding pro se. We do not hold the pleadings of pro se litigants to the same standards of licensed attorneys, *Kyle v. Patterson, 196 F.3d 695, 697 (7th Cir. 1999),* but Mack was not proceeding pro se during summary judgment proceedings in the district court, and we have consistently upheld the strict application of similar local rules in other districts in this circuit, *e.g., Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994)* (citing cases and similar rules). Mack also complains that his lawyer was ineffective, but he misconstrues the Sixth Amendment right to counsel, which applies to criminal, not civil, cases. Apart from a limited due process right to counsel in narrow circumstances not present here, the guarantee of effective assistance of counsel is not applicable in civil cases. *Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 840 (7th Cir. 1999).* [*11] We cannot vacate a judgment and grant a new trial in a civil case on the basis of a claim that counsel may have rendered ineffective assistance. *United States v. 7108 West Grand Avenue, 15 F.3d 632, 635 (7th Cir. 1994).*

Proceeding then to the merits, Mack challenges three alleged discriminatory acts: the July 1995 promotion of Mike Pertinac; the July 1996 promotion of Ron Reeves; and his 1998 termination. The district court concluded that the July 1995 claim was time-barred. Complainants must file charges with the EEOC within 300 days of the alleged discriminatory act. *Filipovic v. K & R Express Systems, Inc., 176 F.3d 390, 396 (7th Cir. 1999).* Therefore, because Mack filed his EEOC charges on November 21, 1996, any claim based on alleged discriminatory acts occurring prior to January 26, 1996 is barred by the statute of limitations. Mack argues, however, that Pertinac's promotion over him was part of a continuing violation of his civil rights. Plaintiffs can litigate adverse employment actions based on acts occurring outside of the statute of limitations only if the

discriminatory nature of the acts was not evident when they occurred. *Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999).* [*12] The record shows that shortly after State Farm promoted Pertinac over Mack in 1995, Mack discussed filing an age-discrimination lawsuit against State Farm with the same law firm that represented him in the district court. Mack therefore was aware of the alleged discriminatory nature of Pertinac's promotion over him, and the district court correctly concluded that this act was not part of a continuing violation of his civil rights.

Next, Mack contends that Reeves was promoted to Lowe's former management position over him because Reeves was ten years younger. The district court concluded that Mack established a prima facie case under the ADEA, but failed to show that State Farm's reasons for choosing Reeves over him were pretextual. State Farm claimed that Reeves had better performance evaluations, more experience, and more education than Mack. Mack did not dispute these reasons; instead Mack asserts that State Farm did not honestly hold them because Reeves's reviews were not as good as State Farm claimed, Reeves did not have public relations experience, and Reeves "did not last in Public Affairs--he was gone in approximately a year's time." Mack submitted this evidence to the district [*13] court in his memorandum of law in opposition to State Farm's summary judgment motion and in later filings in the district court and this court. The district court, however, was not obligated to consider untimely-presented evidence, and neither are we. *Uhl v. Zalk Josephs Fabricators, Inc., 121 F.3d 1133, 1135 (7th Cir. 1997).* As to Mack's claim that he was terminated because of his age, his initial burden was to show (1) he was in the protected age group of 40 or older; (2) he was performing his job satisfactorily; (3) he was discharged; and (4) a similarly-situated younger employee took over his position. *See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 716 (7th Cir. 1999).* Mack presented no evidence that a younger employee replaced him after State Farm terminated him, and we agree with the district court that Mack failed to establish his prima facie case of age discrimination with regard to his termination.

Mack also claims that he was passed over for promotion because he has OCD. The district court assumed that Mack could prove his prima facie case under the ADA, but went on to conclude that Mack failed to come forward with any evidence showing [*14] that State Farm's reasons for not promoting him were pretextual. We agree. State Farm stated that it believed that Reeves was the best candidate for the job. Def.'s Stmt. Uncontested Facts at 17, P 62 (R. at 50). Mack did not dispute or object to this statement, and accordingly admitted it as true. *Cf. Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir. 1992)* (affirming summary judgment where plaintiff admitted that defendant honestly believed its legitimate, non-discriminatory reason for taking adverse action).

To prove that he was fired due to his OCD, Mack had to establish a prima facie case of disability discrimination by proving that (1) he was disabled as defined by the ADA; (2) State Farm was aware of his disability; (3) he was otherwise qualified for the job; and (4) he was terminated because of his disability. *See Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1032 (7th Cir. 1999).* Mack's own physician stated that it was "unknown" when Mack would be able to return to work, and Mack did not dispute that State Farm believed he could not return to work. Nothing in the ADA requires an employer to provide an employee with an indefinite leave of [*15] absence, *Nowak v. St. Rita High Sch., 142 F.3d 999, 1004 (7th Cir. 1998)*, and employers are entitled to take employees and their physicians at their word when they represent that they are totally disabled and completely unable to return to work, *Feldman v. American Mem'l Life Ins. Co., 196 F.3d 783, 791 (7th Cir. 1999).* It was Mack's burden to show that he was willing and able to come to work on a regular basis in October 1998, *see Nowak, 142 F.3d at 1003;* he did not do so, and thus he was not otherwise qualified for his position.

Mack asserts, however, that he would have returned to work if State Farm had made reasonable accommodations for him. He suggested that State Farm should "leave him alone," and allow him to remain at his desk without interaction with management until he reaches retirement age. An employer may be required to reassign a disabled employee to a different position if the employee can no longer perform the essential functions of their current position, but is not obligated to create a new position or to provide the accommodation that the employee requests or prefers. *Malabarba v. Chicago Tribune Co., 149 F.3d 690, 699 (7th Cir. 1998).* [*16] We believe that Mack's preferred accommodation would create an undue hardship on State Farm, *see id.*, and therefore is not reasonable.

Accordingly, we AFFIRM the judgment of the district court.