IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL SHIELDS                    *

         Plaintiff          *

         vs.                      *CIVIL ACTION NO. MJG-02-1783

FEDERAL EXPRESS CORPORATION,       *
et al.
         Defendants         *

*        *        *        *        *        *        *        *        *

MEMORANDUM AND ORDER

The Court has before it Defendants' Motion for Summary Judgment [Paper 13] and the materials submitted by the parties related thereto.  The Court finds a hearing unnecessary.

I.    BACKGROUND[1]

Plaintiff Michael Shields ("Plaintiff" or "Shields") is an African American male.  Plaintiff was, at all times relevant hereto, employed by Defendant Federal Express Corporation ("FedEx").  Plaintiff began working for FedEx in October of 1981.  He rose to the rank of Manager in 1989.  Plaintiff had high performance ratings for twelve years.  For the majority of that time his direct supervisor was African American.  Plaintiff became a Senior Manager at FedEx's

---

[1]  In the present summary judgment context, it is necessary to assume that the Plaintiff's version of the disputed facts is correct.

Domestic Ground Operations Division at the BCBA station.  In July of 2000, Defendant Patrick Quirke ("Quirke"), a white male, became Plaintiff's direct supervisor.  Quirke was, at all times relevant hereto, the Managing Director of FedEx's Capitol District.

In September of 2000, Plaintiff complained to Quirke after Quirke ordered Plaintiff to discipline an African American subordinate, Rva Pendleton ("Pendleton").  Plaintiff believed that Quirke was punishing Pendleton more harshly than a white employee who had been involved in the same incident for which Pendleton was being punished.  When Plaintiff complained to Quirke, he was admonished for being "unwilling or afraid to administer disciplinary actions to African American subordinates."  Pl.'s Opp. to Def. Mot. to Dismiss at 10.  Plaintiff pursued the matter, urging Pendleton to file a Guaranteed Fair Treatment Procedure (GFTP) and insisting that an impartial party hear the GFTP.  As a result, Pendleton received a lesser punishment.

On September 23, 2000, a subordinate, Bobby Richardson ("Richardson"), made a racial and sexual orientation based slur against Plaintiff.  Plaintiff complained to Quirke who responded by criticizing Plaintiff's management style.  After Plaintiff reported the incident to upper level management,

2

FedEx investigated the incident and suspended Richardson who never returned to work for FedEx.

Prior to October of 2000, Plaintiff repeatedly failed to meet the performance expectations set for his station.  In October of 2000, Quirke began receiving complaints from Plaintiff's subordinates about his management style.  As a result of his performance problems and the employee complaints, Quirke met with Plaintiff on October 10, 2000. Quirke offered Plaintiff the opportunity to step down to a lower level Senior Manager position.  Plaintiff rejected this solution.  Therefore, pursuant to FedEx's Performance Improvement Policy ("PIP"), Quirke required Plaintiff to submit a Performance Agreement ("Agreement").

The Agreement was to detail specific steps Plaintiff would take to improve his performance.  The first Agreement Plaintiff presented was found to be unacceptable, and Quirke worked with Plaintiff to revised it.  Plaintiff failed to implement the Agreement, a terminable offense.  Rather than firing Plaintiff, Quirke issued a Warning Letter on January 8, 2001.  Plaintiff still failed to implement the Agreement and was told that he would be receiving an unfavorable Performance Evaluation in February unless Plaintiff made significant improvement.  Quirke told Plaintiff that he could resign with

a severance package or face additional disciplinary action.
Plaintiff rejected the severance package.

On February 19, 2001, Quirke gave Plaintiff an
unsatisfactory Performance Evaluation and issued a Performance
Reminder pursuant to FedEx's PIP.  Plaintiff was required to
submit a second Performance Agreement.  Plaintiff submitted
the Second Agreement on February 20, 2001.  The Second
Agreement, like the original Agreement, was unsatisfactory due
to a failure to list specific problems and remedies.
Plaintiff was again given the opportunity to revise the Second
Agreement; and, again, Plaintiff presented a deficient
agreement.  Quirke then suspended Plaintiff pending an
investigation.  On February 26, 2001, Quirke issued a
Performance Reminder/Termination Letter.  Because this letter
was the third such letter Plaintiff had received in a twelve
month period, a terminable offence, Plaintiff was fired.

Plaintiff filed a formal complaint with the EEOC on June 7,
2001 alleging violations of Title VII and received a right to sue
letter on February 26, 2002.  He filed the instant lawsuit against
Defendants seeking damages and other relief for Defendants' alleged
violations of Title VII.  Plaintiff presents the following causes of
action:

        Count I        Racial Harassment (Title VII)

4

Count II        Racial Discrimination (Title VII)

Count III       Retaliation (Title VII)

By the instant motion, Defendants seek Summary Judgment on all claims.

## II.  <u>SUMMARY JUDGMENT STANDARD</u>

A motion for summary judgment shall be granted if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The well-established principles pertinent to such motions can be distilled to a simple statement.

The Court may look at the evidence presented in regard to the motion for summary judgment through the non-movant's rose colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. <u>E.g., Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970); <u>Shealy v. Winston</u>, 929 F.2d 1009, 1012 (4th Cir. 1991).

5

III.    <u>DISCUSSION</u>

    A.  <u>Defendant Quirke</u>

    Defendant Quirke is not a proper Defendant to the instant Title VII suit as he was merely Plaintiff's supervisor and not his employer.  The Fourth Circuit held, in <u>Lissau v. Southern Food Service, Inc.</u>, 159 F.3d 177, 180 (4th Cir. 1998), that "supervisors are not liable in their individual capacities for Title VII violations."  The Fourth Circuit "reasoned that Congress intended that only an employer may be held liable for a Title VII violation and noted that nowhere in the Civil Rights Act of 1991 was individual liability mentioned as an available remedy."  <u>Temple v. Benjamin</u>, 2001 WL 826576, *4 (D.Md. 2001).  <u>See also</u> <u>Haynie v. St. Mary's County</u>, 2001 WL 194297, *2 (D.Md. 2001)("An individual employee/supervisor is not liable for Title VII violations, even if he or she had authority to hire and fire the plaintiff. . . .  Title VII allows a plaintiff to sue only her 'employer' for unlawful discrimination.")

    Therefore, under <u>Lissau</u>, Quirke is not a proper party to the instant suit.  Accordingly, as Plaintiff has failed to state a claim for which relief can be granted, his claims against Quirke shall be dismissed.

6

B.    **Federal Express**[2]

All of Plaintiff's Title VII claims are analyzed under the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973). See Smith v. First Union National Bank, 202 F.3d 234, 248 (4th Cir. 2000). The plaintiff must first establish a prima facie case of unlawful discrimination. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. Id. If the employer can do so, the burden then shifts back to the plaintiff to prove that the defendant's purported reason was mere pretext. The plaintiff can do this by showing "'both that the reason was false, and that discrimination was the real reason' for the challenged conduct." Jimenez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir. 1995), quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). Thus, the plaintiff's claim "should not be submitted to a jury if there is evidence that precludes a finding of discrimination, that is if 'no rational fact-finder could conclude that the action was discriminatory.'" Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000), quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000).

---

[2] Because all claims against Defendant Quirke shall be dismissed, Defendant FedEx is hereinafter referred to as "Defendant."

1.  <u>Racial Harassment (Hostile Work Environment)</u>[3]

To establish a prima facie hostile work environment case, Plaintiff must prove that the alleged conduct was "(1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and that (4) there was some basis for imposing liability on employer." <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 182 (4th Cir. 2001), <u>citing</u> <u>Causey v. Balog</u>, 162 F.3d. 795, 801 (4th Cir. 1998). Plaintiff contends that he was subjected to a hostile work environment when Quirke forced him to administer racially disparate disciplinary measures to an African American employee, when Richardson made racial slurs against Plaintiff, and when Quirke criticized Plaintiff's management style after Plaintiff complained about Richardson's remarks.

Plaintiff's complaints about and actions to overturn the disciplinary action against Pendleton indicate that being required to

---

[3] Defendant argues that Plaintiff's Racial Harassment claim should be dismissed because Plaintiff did not charge "racial harassment" in his EEOC complaint. However, Plaintiff did charge the underlying conduct, i.e. the failure to discipline another employee for use of a racial slur against Plaintiff and the disparate administration of disciplinary measures on the basis of race, in his EEOC complaint. The Court shall not punish Plaintiff, who filed the EEOC charge without the aid of counsel, for the failure to state the precise name of the charge. Thus, the Court shall consider Plaintiff's racial harassment claim.

impose the sanctions was unwelcome.  Thus, Plaintiff has established the first prong of his prima facie case.  However, Plaintiff has failed to establish that Quirke's actions with regard to Pendleton's discipline were based on race.  Furthermore, even if the disciplinary action was racially motivated, Plaintiff was only required to take one alleged racially discriminatory disciplinary action.  This isolated incident is certainly not enough satisfy the requirement that the complained of conduct be sufficiently severe and pervasive to alter the terms and conditions of employment.

Given Plaintiff's complaint about the racial slur and the filing of this action, it can be assumed that the comment was unwelcome.  The nature of the comment, a racial slur, indicates that is it was based on race.  Thus, the first two elements of the prima facie case can be established with regard to the slur.  However, the comment, while offensive, exists in a vacuum on the present record.  Quirke's alleged reaction to Plaintiff's complaint about Richardson was also an isolated incident.  When Plaintiff complained to upper level management, corrective action was taken.

Because no reasonable fact-finder could find that this behavior was sufficiently pervasive or severe enough to alter the terms or conditions of employment, Plaintiff has not presented sufficient evidence to establish his prima facie case for hostile work

9

environment.  Accordingly, Defendant is entitled to summary judgment on the racial harassment claim.

### 2.  Racial Discrimination

Plaintiff alleges that he was subjected to racially discriminatory treatment when he was placed on a Performance Improvement Plan, given negative evaluations, and eventually fired. In order to establish a prima facie case of racial discrimination in a disciplinary action, Plaintiff must establish that 1) Plaintiff is a member of a protected group; "[2]] that plaintiff engaged in prohibited conduct similar to that of a person of another race..., and [3]] that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." Moore v. City of Charlotte, NC, 754 F.2d 1100, 1105-1106 (4th Cir. 1985).

Plaintiff is African American and a member of a protected class.  Plaintiff has also established that he engaged in prohibited conduct similar to that of similarly situated white employees of FedEx.  Plaintiff was a Senior Manager. Plaintiff's station repeatedly failed to meet performance

expectations[4], and Plaintiff received low Performance Evaluations.  At least one other Senior Manager, Barnes, received a low Performance Evaluation.[5]  Yet another Senior Manager, Hergesheimer, failed to meet performance expectations.  Both Barnes and Hergesheimer were non-African American Senior Managers who engaged in prohibited conduct similar to that of Plaintiff.[6]  Thus, Plaintiff has established the first two prongs of his prima facie case of racial discrimination.

_____

[4]  Plaintiff argues that he failed to meet these expectations because Quirke intentionally set the expectations too high in an effort to find an excuse to fire Plaintiff. This argument fails, however, because Plaintiff failed to meet performance expectations and received low evaluations from at least three supervisors other than Quirke.

[5]  It should be noted that while Barnes received a low evaluation on two out of ten categories of performance, his overall Performance Evaluation was satisfactory.  Plaintiff's overall Performance Evaluation was unsatisfactory.  Despite this distinction, the Court will treat Plaintiff and Barnes as similarly situated for purposes of the discrimination analysis.

[6]  Plaintiff also argues that Lewis, a Grade 27 Level Senior Manager, was similarly situated to Plaintiff.  However, Lewis can be distinguished in several ways.  Lewis was not in charge of a station.  He was a lower grade manager than Plaintiff and had less responsibility.  Finally, Lewis' performance was satisfactory during the time he reported to Quirke.  Accordingly, the Court shall not consider Lewis to be similarly situated to Plaintiff for the purposes of this analysis.

Plaintiff, however, has failed to establish the third prong of his prima facie case, that the disciplinary actions taken against him were more harsh than those taken against Barnes and Hergesheimer. Plaintiff failed to meet the performance expectations set for his station and was the subject of employee complaints.  Quirke gave Plaintiff the opportunity to step down to a position with less responsibility. Plaintiff refused this offer.  Quirke then worked with Plaintiff to devise Performance Agreements to improve Plaintiff's performance.  Plaintiff failed to take advantage of these opportunities for improvement on two separate occasions.  Plaintiff was offered the opportunity to resign with severance package and rejected this offer as well. Finally, Plaintiff was fired after receiving three warning letters in a twelve month period.

Barnes, on the other hand, never received an overall, unsatisfactory Performance Evaluation.  Barnes was only deficient in two categories.  He submitted a Performance Agreement specifically addressing the problems and the intended remedies.  This Agreement was found to be acceptable, and Quirke monitored Barnes' progress towards reaching his goals.  While Barnes made slight improvements, he did not reach his performance goals.  Barnes was required to submit a

12

second Agreement.  Although Barnes followed the Agreement, he did not fully reach his goals an was issued a Performance Reminder.  Shortly thereafter, Barnes requested that he be allowed to step down to a lower level position.  Quirke agreed, and Barnes took a three grade deduction in pay.  He is now a FedEx manager.

Hergesheimer became a Senior Manager of a station in January 2001.  After failing to reach performance expectations, Quirke asked Hergesheimer to step down in June 2001.  Hergesheimer did so and accepted a three grade reduction in pay.  He is now a FedEx manager.

Plaintiff was given the opportunity to step down to a lower grade position like Barnes and Hergesheimer.  Plaintiff, unlike the two similarly situated Senior Managers refused this option. Then, Plaintiff was given the opportunity to develop and implement a Performance Agreement.  Like Barnes, Plaintiff failed to improve his performance.  Unlike Barnes, however, there is no evidence that Plaintiff made a good faith effort to improve. Plaintiff could have been fired at several junctions, but Quirke chose not to do so. Plaintiff has been treated less harshly than he could have been and has definitely not been treated more harshly than Barnes or Hergesheimer.

13

Plaintiff, having failed to establish that he was treated more harshly than similarly situated persons of another race, has failed to establish the third prong of his prima facie case.  Accordingly, Defendant is entitled to summary judgment on the racial discrimination claim.

### 3.  <u>Retaliation</u>

In order to establish a prima facie case of retaliation, Plaintiff must show that: "(1) [he] engaged in a protected activity; (2) the employer took an adverse employment action against [him]; and (3) a causal connection existed between the protected activity and the asserted adverse action."  <u>Von Guten v. Maryland</u>, 243 F.3d 858, 863 (4th Cir. 2001); <u>citing</u> <u>Bealle v. Abbott Labs</u>, 130 F.3d 614, 619 (4th Cir. 1997).

Plaintiff has failed to carry his initial burden of establishing a prima facie case of retaliation.  The protected activity Plaintiff claims to have engaged in was objecting to what he believed was the disparate treatment of an African American employee, Pendleton.  Plaintiff believed that Quirke had ordered him to give Pendleton a harsher punishment for a work place altercation than a white employee who was involved in the same incident.

Plaintiff also reported the use of racial and sexual orientation based slurs.  The party who had used the slurs was

suspended and eventually resigned as the result of Plaintiff's complaint.

The Fourth Circuit has clearly articulated what activities constitute opposition. "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 259 (4th Cir. 1998). Plaintiff argues that his actions in the Pendleton incident rise to the level of legitimate opposition activity. However, Plaintiff's actions, even when viewed in the light most favorable to Plaintiff, does not amount to more than opposition to the unfair treatment of one employee or, on the flip side, favoritism towards another employee.

Plaintiff sought to decrease Pendleton's punishment. There is no evidence that he sought to expose any discriminatory activity, and there is no evidence that the difference in the punishments dealt to Pendleton and the white employee was based on race. As this Court held in Adams v. Giant Foods, Inc., "[f]avoritism, while unfair, is not violative of Title VII in the absence of improper discriminatory intent." 225 F.Supp.2d 600, 605 (D.Md 2002) (internal citations omitted); See Holder v. Raleigh, 867 F.2d 823, 825-26 (4th Cir.1989).

15

With regard to Plaintiff's complaint about the slurs against him, his complaint to his superiors about the language of one of his subordinates does not constitute opposition activity.  Opposition activity must concern violations of Title VII.  At the least, there must be a good faith belief that one is opposing a violation of Title VII.  Only an employer can violate Title VII.  The offensive conduct of an employee which is immediately remediated by the employer is not a Title VII violation.  Therefore, opposition to such behavior is not opposition to a violation of Title VII.  Had Plaintiff been accosted by a supervisor and complained or if Plaintiff's complaints about his subordinate been ignored by Plaintiff's superiors requiring him to lodge a formal or informal complaint , Plaintiff might have been able to establish that he engaged in a legitimate opposition activity.  However, Plaintiff was accosted by a subordinate, reported the offensive behavior, and compelled action against the subordinate.  Because, the employer was not involved, and could not reasonably be perceived to have been involved, in the conduct at hand, Plaintiff did not engage in any legitimate opposition activity for purposes of the retaliation analysis.

Because Plaintiff has failed to establish the first prong of his prima facie case, Plaintiff's retaliation claim must fail.  Accordingly, Defendant is entitled to summary judgment on the retaliation claim.

IV.    <u>CONCLUSION</u>

For the foregoing reasons:

1.    Defendants' Motion for Summary Judgment is GRANTED.

2.    Judgment shall be entered by separate Order.

SO ORDERED, on <u>Friday, 20 June, 2003</u>.

<u>          / s /          </u>
Marvin J. Garbis
United States District Judge

17